[No. 20324.  In Bank. — October 31, 1887.]

## Ex parte E. I. CAMPBELL, on Habeas Corpus.

Municipal Corporations — Prohibiting Sale of Liquors — Constitutional Law. — The city of Pasadena, a city of the sixth class, as defined by the municipal corporation act of March 13, 1883, has power, under section 11 of article 11 of the constitution, to enact an ordinance prohibiting the maintenance within the city limits of any tippling-house, dram-shop, or bar-room, where spirituous, vinous, malt, or mixed liquors are sold or given away. Such an ordinance is not in conflict with any provision of the constitution of the United States, or with any general law of the state.

Application for a writ of *habeas corpus.*  The facts are stated in the opinion of the court.

*Rearden & Ray,* for Petitioner.

*Williams & McKinley,* and *N. P. Conroy,* for Respondent.

Paterson, J.—The petitioner is before us on a writ of *habeas corpus* to test the validity of an ordinance of the city of Pasadena, duly passed, approved, and published, for a violation of which he has been duly convicted. The ordinance was passed February 19, 1887, and took effect on the first Monday in May, 1887. The following provisions only are germane to the matter before us: —

"Sec. 1. It shall be and is hereby made unlawful for any person or persons, either as owner, principal, agent, servant, or employee, to establish, open, keep, maintain,

or carry on, or assist in carrying on, within the corporate limits of the city of Pasadena, any tippling-house, dram-shop, cellar, saloon, bar, bar-room, sample-room, or other place where spirituous, vinous, malt, or mixed liquors are sold or given away; . . . . provided, that the prohibitions of this ordinance shall not apply to the sale of liquors for medicinal purposes by a regularly licensed druggist, upon the prescription of a physician entitled to practice medicine under the laws of the state of California; nor shall such prohibitions apply to the sale of such liquors for chemical or medicinal purposes."

Violations of the ordinance are declared to be misdemeanors. The complaint under which petitioner was convicted charged that the said Campbell, at the time and place aforesaid (May 3, 1887), did keep and maintain a certain dram-shop, saloon, and bar-room, where spirituous and malt liquors were then sold, said defendant being then and there the owner thereof; that said defendant was not then and there a regularly licensed druggist, and the liquors then and there sold by him were not sold for either chemical or medicinal purposes.

In addition to the facts above stated, counsel for the petitioner and for the people have stipulated,—

"That there has not since the first day of May, 1887, been any ordinance of the city of Pasadena requiring a license to sell vinous, malt, or mixed liquors in any quantity.

"That there was an ordinance of the city of Pasadena requiring a license to retail spirituous, vinous, malt, and mixed liquors, passed in June, 1886, which was in force up to the first day of May, 1887; and the said city issued a license under said ordinance to petitioner to retail and sell spirituous, vinous, malt, and mixed liquors up to the first day of May, 1887; but said ordinance was repealed February 19, 1887, the repeal taking effect May 1, 1887.

"That the petitioner has paid all county and municipal taxes assessed against the spirituous, vinous, malt, and

mixed liquors owned, kept, and sold by him in said saloon in said city of Pasadena."

It is claimed by the petitioner that the ordinance is void because it conflicts with section 13, article 1, of the constitution of this state, which provides that no person shall be deprived of life, liberty, or property without due process of law. It has been held that an act which substantially destroys the property in intoxicating liquors owned and possessed by persons within the state when the act took effect, by preventing the sale, keeping, or giving away **of** the same, except for medicinal purposes, is violative of this provision of the constitution, and in its application to such liquors is inoperative and void. (*Wynehamer* v. *People*, 13 N. Y. 378; *Bertholf* v. *O'Reilly*, 74 N. Y. 516.)

That question, however, is not properly before us in this proceeding. It is not shown by the record when, if ever, the petitioner became the owner of the liquor sold. The last paragraph of the above stipulated facts, as to payment of taxes, was intended, no doubt, to present the question arising out of ownership for an opinion, but the language is so uncertain in its effect that it ought not to be taken as the basis of a decision upon so grave and important a constitutional question. In all inquiries upon matters of this kind the facts should be full and clear, or the court should refuse to consider the question. (*Bartemeyer* v. *Iowa*, 18 Wall. 129.)

The same may be said of the contention that the ordinance is void under section 8, article 1, subdivision 3, of the constitution of the United States, because no distinction is made between imported wines and liquors remaining in the original and unbroken packages, and other wines and liquors; there is nothing to show the character of the liquors sold by the petitioner. Furthermore the petitioner is charged with keeping a *bar-room, and we consider the case only upon that basis.* It is further claimed that the ordinance is void, because, " under the

municipal corporation act, the city of Pasadena was not authorized to pass the ordinance (Stats. 1883, c. 49, sec. 862, subds. 1–10); for if the legislature had intended to confer the power to prohibit the sale of wines and liquors upon cities of the sixth class (of which Pasadena is one), it would have said so in direct terms, as was done in the case of cities of the fourth class."

Prior to the adoption of the constitution of 1879, the local authorities possessed only such powers as were expressly or by necessary implication conferred upon them by their charters.   It is now provided that " any county, city, town, or township may make and enforce within its limits all such local police, sanitary, and other regulations as are not in conflict with general laws." (Const., art. 11, sec. 11.)   Under this provision, every county, city, town, or township may adopt and enforce such constitutional police regulations as are not in conflict with general laws.   It has the same power over its own local police and sanitary affairs as were formerly granted by the legislature, and unless the exercise thereof will conflict with the operation of general laws, it may make and enforce the same through its local government.   That such a law as the one before us is not repugnant to any clause of the constitution of the United States, there can be no doubt.   The supreme court of the United States has decided, uniformly, that " the usual ordinary legislation of the states regulating or prohibiting the sale of intoxicating liquors raises no question under the constitution of the United States prior to the fourteenth amendment of that instrument.   The right to sell intoxicating liquors is not one of the privileges and immunities of the citizen of the United States, which by that amendment the states were forbidden to abridge." (*Bartemeyer* v. *Iowa, supra; License Cases,* 5 How. 504; *Beer Co.* v. *Massachusetts,* 97 U. S. 32).   And that the power to license, regulate, or prohibit *tippling-houses* is a constitutional right, which may be enforced as a police regula-

tion through proper legislation, is no longer an open question in this state. In *Ex parte Smith and Keating*, 38 Cal. 708, it was said: "Legislatures have enacted a variety of laws which undoubtedly, in a general sense, affect the rights of life, liberty, property, safety, and happiness by way of restraint. Of such are laws regulating the slaughter of animals, the interment of the dead, the erection of buildings in cities and towns of inflammable material, the manufacture and keeping of gunpowder and other explosive compounds, the vending of poisons and other noxious drugs, the sale of intoxicating beverages to certain classes of persons, as Indians, and even to all classes of persons, as in the case of the prohibitory liquor laws of Maine and Massachusetts." (*Ex parte McClain*, 61 Cal. 437; 44 Am. Rep. 554.)

Unless we are prepared, therefore, to overrule the decisions of our own state, and disregard the opinions of the supreme court of the United States, we must hold that the ordinance in question is free from objection, so far as its constitutionality is concerned; that it is not violative of any clause of the constitution of the United States; and that it is, in its scope and operation, within the police powers which may be lawfully enforced under the provisions of the constitution of this state.

There is but one question remaining to be considered: Is the ordinance "in conflict with general laws"? Section 11, article 11, of the constitution, clearly subordinates the powers conferred upon counties, cities, towns, and townships to the general laws of the state. It is claimed that the ordinance before us is in conflict with general laws because "the one prohibits, the other makes full provision for the granting of licenses for, the sale of spirituous, vinous, and malt liquors." In support of this contention, counsel cites sections 3356, 3381, 3382, 4045, and 4408 of the Political Code, and subdivision 33, section 25, of the county government act, Statutes of 1883, page 303. The provisions of the Political Code

referred to are unconstitutional, and no longer operative. This was decided in *People* v. *Martin*, 60 Cal. 156, where it is said that "the taking of the power to impose such taxes [licenses] from the legislature, and vesting it in the local authorities, is but another of the many evidences to be found in the new constitution of the intention to bring matters of a local concern home to the people." Those sections of the Code, therefore, stand annulled by the constitution. Section 25 of the county government act confers upon the boards of supervisors in their respective counties power to make and enforce "all such local police, sanitary, and other regulations as are not in conflict with general laws." There is nothing in the case before us to show whether the board of supervisors of Los Angeles County have ever made any regulations with respect to the sale of wines or liquors in saloons and bar-rooms, but manifestly such regulations, if made, could not operate to divest the authorities of the city of the right to legislate upon the same subject, and enforce such regulations within the city limits. The regulations of the board of supervisors would not be a general law within the meaning of the provisions of section 11, article 11, of the constitution.

Our attention has not been called to any general law from which an intention on the part of the legislature to prohibit such ordinances as the one before us—local police regulations in cities—can be inferred. It is true, as claimed by the petitioner, the legislature has by many acts manifested the policy of encouraging the growth of the grape and the manufacture of wines and brandies by our people, and has considered the liquor traffic heretofore as a legitimate source of revenue; but no act now in force and effect is, by its express terms or by implication, a limitation upon the powers of the municipalities of the state to regulate or prohibit the sale of intoxicating liquors in bar-rooms. The legislature has prohibited the sale of liquors to minors, and in the lob-

bies of theaters, near camp-meetings, and in and about certain public buildings and institutions of learning. It has also repealed what was known as the Sunday law; and by an act recently passed, has made it unlawful to sell, or offer to sell, under the name of wine, or under any name designating pure wines, any substance or compound except pure wine, or pure grape must, as defined in the act; and has appropriated a large sum of money for the use of the state board of viticulture. All these are indicative of a policy to regulate.

There is nothing in these acts inconsistent with the constitutional authority vested in the municipalities to make and enforce such local regulations respecting saloons, etc., as may be deemed best by the local legislative bodies. Section 11 of article 11 is itself a charter for each county, city, town, and township in the state, so far as its local regulations are concerned; and nothing less than a positive and general law upon the same subject can be said to create a conflict within the meaning of that section. (*Ex parte Ah Toy*, 57 Cal. 92.)

There is nothing in this case which requires us to determine any other question than the right of the city to prevert tippling-houses, dram-shops, and bar-rooms,— a question entirely different from that sought to be raised by petitioner, arising out of the ownership and manufacture of wines, etc.

Not only is there nothing in the provisions of the ordinance before us inconsistent with general laws, but its provisions are in harmony with the authority expressly vested in cities of the sixth class by section 862 of the municipal corporation act of March 13, 1883, which provides that the board of trustees shall have power "to pass all ordinances not in conflict with the constitution and laws of this state or of the United States." This act of March 13, 1883, is in harmony with, and passed in obedience to, the provisions of section 6, article 11, of the constitution.

In cases of this kind, we have nothing to do with the policy of the law. That is a matter for the legislature. In determining the question whether there is a *conflict*, we look only at the law itself, which is the best and only evidence of the policy of the state on the question before us.

The petitioner is remanded to custody.

McKinstry, J., Thornton, J., Temple, J., Searls, C. J., and Sharpstein, J., concurred.

McFarland, J., dissenting. — I dissent. There is no pretense that the ordinance in question is the result of the exercise of the power to *regulate*, or to raise revenue for municipal purposes by license or tax. Its clear purpose is practically to destroy the ownership of certain commodities which, in other parts of the state, are recognized and dealt with as property as fully as is flour, or bacon, or sugar. One of them — wine — is the product of a leading industry. It provides that these commodities shall not be sold or given away at any place within the bounds of the municipality. The power to sell or dispose of property gives to it its main valuable quality; and to take away this quality is to substantially confiscate it. Without discussing the many other grave constitutional questions which the case presents, — the discussion of which other duties prevent, — I will content myself with saying here that, in my opinion, the ordinance is " in conflict with general laws." The text of a state constitution is necessarily terse and concise, and it may be assumed that its framers, in stating a rule or principle, used as few words as would fairly express the idea intended. The evident intention of the clause above quoted was to prevent any confusion, or discord, or incongruity between the general legislation of the state in its broad sovereign capacity and the special legislation of its dependent municipalities. An ordi-

nance, therefore, may be in conflict with general laws, although the latter may not in express terms forbid the passage of the former. Whatever is inconsistent or inharmonious or at variance with or contradictory of or repugnant to the general policy of the state, as expressed in its general laws, is "in conflict" with those laws. And that there is a conflict in this sense between an ordinance which substantially declares that certain commodities shall not be property, and general laws of the state which not only impliedly but expressly declare that they *are* property, seems to be too clear for discussion. From the first to the last session of the legislature of this state wines and liquors have been recognized as property, and as a legitimate source of revenue. The policy of the state has been to encourage, not to cripple, their manufacture. Prior to the new constitution the state usually licensed their sale. Since the new constitution was adopted that source of revenue has been turned over to the counties. The county government bill, which is a "general law," expressly authorizes the county governments to license such sale; and the city of Pasadena is not authorized by its charter to suppress it. The state, too, has provided for a "state board of viticulture," and appropriated to its use a large sum of money. Among the duties prescribed for this board is the selecting of persons competent to lecture and impart instruction "in methods of culture, pruning, fertilizing, fermenting, distilling, and rectifying." It is also provided that the board of regents of the University of California shall provide for special instruction "in the arts and sciences pertaining to viticulture, the theory and practice of fermentation, distillation, and rectification, and the management of cellars, to be illustrated," etc.; also, for an examination and report upon the woods of the state "procurable for cooperage"; also, for an analysis of "soils, wines, brandies, and grapes." And furthermore, the legislature, at its recent session, passed

an act expressly providing for the sale of wine, and for the prevention of fraud "in the manufacture and sale thereof." (Stats. 1887, p. 46.) It expressly provides that the state controller shall furnish printed labels to be put on the bottles and packages "in which wine is sold." (Sec. 7.) Section 6 provides that "*in all sales and contracts for sale*, production, or delivery of *products defined in this act*, such products, in the absence of a written agreement to the contrary, shall be presumed," etc. Section 8 provides that "it is desired and required that all and every grower, manufacturer, trader, handler, or bottler of California wine, *when selling or putting up for sale* any California wine, . . . . shall plainly stencil, brand," etc. The act is quite a long one, and provides in detail for the sale of wine and the prevention of its adulteration. Now, suppose that the legislature had passed another act providing that neither spirituous, vinous, nor malt liquors should be sold or given away at any place, is there any sensible man who would not say that the two acts were "in conflict"? But the provision above supposed has been put into an ordinance of the city of Pasadena, — and is not the conflict clearly there?

The notion of local self-government was never intended to be pushed to the extreme of disregarding and defeating the will of the legislature, which speaks and acts for the state.

In my opinion, the petitioner should be discharged.