[Crim. No. 764.    In Bank. — August 26, 1901.]

## Ex parte ANDREW ANDERSON, on Habeas Corpus.

COUNTY GOVERNMENT ACT — INVALID SECTION FOR ORDINANCES OF ELEC-
TORS. — Section 13 of the County Government Act of 1897 (Stats.
1897, p. 454), permitting the electors of the county to frame and
pass ordinances for the government of the county, "having the
same force and equal effect as though adopted and ordained by the
board of supervisors," is inconsistent with the legislative power
granted under our system of government to the board of supervisors,
and is invalid and void.   [Beatty, C. J., dissenting.]

ID. — CONSTITUTIONAL LAW — SYSTEMS OF COUNTY GOVERNMENT — CO-
ORDINATE LAW-MAKING POWERS. — Without deciding whether the
legislature may confer local law-making power directly upon the
people, it cannot establish two equal co-ordinate law-making
powers, under the system of county government provided for in the
constitution.   Under the constitution and the County Government
Act, the legislative power conferred upon the board of supervisors
must be preferred to an inconsistent law-making power conferred
upon the electors of the county.

HABEAS CORPUS in the Supreme Court to test the validity
of an ordinance of Ventura County passed by vote of the
electors of the county.

_. conviction of the petitioner was had in the justice's court
of Saticoy township, before W. D. Wright, justice of the peace,
for alleged violation of an ordinance entitled "An ordinance
prohibiting the business of selling and the sale of vinous,
spirituous, distilled, malt, mixed, and other intoxicating liquors
within the county of Ventura," etc., purporting to be an ordi-
nance of said county, "under and in accordance with the pro-
visions of section 13" of the County Government Act of
April 1, 1897.   The writ of *habeas corpus* was directed to the
sheriff of the county of Ventura.

H. L. Poplin, for Petitioner.

S. M. Swinnerton, *amicus curiæ*, also for Petitioner.

F. W. Ewins, District Attorney of Ventura County, for
Respondent.

C. C. Wright, E. C. Bower, and Lewis W. Andrews, *amici
curiæ*, also for Respondent.

HENSHAW, J.— Petitioner was convicted of violating an ordinance of the county of Ventura, adopted by a vote of the electors of the county at an election held in November, 1900, under the provisions of section 13 of the County Government Act of 1897 (Stats. 1897, p. 454). He contends that the ordinance under which his conviction was had is unconstitutional and void.

Section 1 of article XI of the constitution reads as follows: " The several counties, as they now exist, are hereby recognized as legal subdivisions of this state."

Section 4 of article XI of the constitution provides that " the legislature shall establish a system of county governments which shall be uniform throughout the state."

Section 5 of article XI of the constitution ordains that " the legislature, by general and uniform laws, shall provide for the election or appointment, in the several counties, of boards of supervisors, sheriffs, [etc.,] and shall prescribe their duties, and fix their terms of office."

Section 11 of article XI of the constitution declares that " any county, city, town, or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws."

Section 1 of the County Government Act of 1897 provides that " the several counties of this state, as they now exist, . . . are bodies corporate and politic, and, as such, have the powers specified in this act, and such other powers as are necessarily implied." By section 2, " their powers can only be exercised by the board of supervisors, or by agents and officers acting under their authority, or authority of law"; and by subdivision 25 of section 25, boards of supervisors are empowered "to license, for purposes of regulation and revenue, all and every kind of business not prohibited by law," etc.; while, by subdivision 31 of the same section, boards of supervisors are authorized " to make and enforce, within the limits of their county, all such local, police, sanitary, and other regulations as are not in conflict with general laws."

While thus defining the powers of boards of supervisors as the constitution enjoins upon the legislature to do, concurrently, in the same act, and by section 13 thereof, the legislature declares: " Whenever there shall be presented to the board of supervisors a petition or petitions, signed by legal voters of said county, equal in number to fifty per cent of the votes cast

at the last preceding election, asking that an ordinance, to be set forth in such petition, be submitted to a vote of the qualified voters of such county, it shall be the duty of the board of supervisors, by proclamation, to submit such proposed ordinance to the vote of the qualified electors of such county. Such election shall be held within thirty days after the first regular meeting of the board after the filing of such petition. The ballots used at such special or general election shall contain the words, ' For the ordinance ' (stating the nature of the ordinance), and ' Against the ordinance ' (stating the nature of the ordinance). The election shall be conducted and the returns canvassed in all respects as provided by law for the conducting of general elections and the canvassing the returns thereof. . . . If a majority of the votes cast upon such ordinance shall be in favor of the adoption thereof, the board of supervisors shall proclaim such fact, and upon the publication of such proclamation such ordinance, thus adopted, shall have the same and equal force and effect as though adopted and ordained by the board of supervisors."

The license, for a violation of the terms of which this petitioner was convicted, was a license regulating the sale of intoxicating liquors, and was adopted in accordance with this last-quoted section. At the time of its adoption there was an ordinance covering the same subject-matter regularly passed by the board of supervisors of the county.

The legislative design disclosed by section 13 of the County Government Act is clear and unmistakable. It is a direct grant of power to the voters of a county, or rather to a majority of such voters as may choose to exercise their right of franchise at an election, to pass any and all ordinances pertinent to the government of their county. The petitioners frame and present, without interference from or control by the board of supervisors, the precise ordinance or ordinances which they may desire to have adopted, and those ordinances as presented, if they meet with popular favor, are declared to be and to become valid ordinances of the county, " having the same and equal force and effect as though adopted and ordained by the board of supervisors."

With this for the manifest purpose and object of the law, two questions present themselves: 1. Can the legislature confer directly upon the electors of a county the power to make its laws? and 2. Is the exercise, by the legislature, of this

attempted power, manifested in section 13 of the County Government Act, valid and legal?

1. Under the views which we hold, it is perhaps unnecessary to decide the first of these questions, but it may be remarked, that, while the state recognizes in various forms the right of the electors to a voice in controlling the subject-matter of legislation, this is the first instance where the absolute and uncontrolled power of legislation is taken away from the legislative body, in which heretofore it has always been confided, and has been bestowed upon the electors. And further, it may be remarked that there is nothing in the con-. stitution of the state expressly authorizing this kind of legislation. Constitutional amendments are submitted for approval or rejection to the voters of the state, but the form and substance of the amendments have first been determined by the regularly authorized law-making power. Upon the question of bonded indebtedness, and upon the question of amendments of their charters, the voters of a municipality are allowed a determinative voice; but the matter of the amendment, and the terms of the bonded indebtedness, and the purposes for which it shall be incurred, are all first the subject-matters of legislative review by the law-making power of the municipality,—its board of trustees or city council. Even in *Ex parte Wall*, 48 Cal. 279, the law under consideration only authorized the electors of the township, city, or town to petition the board of supervisors to call an election, at which there should be obtained an expression of the voters upon the question of licensing or not licensing the liquor traffic, and it was provided that if a majority of the votes cast were "for no liquor license," then no license should be granted within such township, city, or town. The decision of this court was against the validity and constitutionality of the act, yet it will be observed that the law there under consideration was of very limited scope and applicability. It was a so-called "local-option law," whereby, if the voters decided against licensing the liquor traffic, no license was to be issued, but if, upon the other hand, their decision was in favor of licensing the liquor traffic, it was still left to the law-making power to prescribe, by appropriate ordinance, the terms and conditions regulating the business. In the case at bar, however, it is to be borne in mind that the right to make any and all laws, such as heretofore the super-

visors could make, is directly conferred upon the people. That this is a startling innovation upon the governmental system recognized in this state since its earliest existence, is at once apparent. But whether or not the legislature has the power so to do is a question the determination of which may well be deferred until some later occasion, in view of the fact that its attempted exercise of that power in this instance is clearly invalid. It will call for, determination when the question is fairly presented under legislation well advised and maturely considered. It need not here be passed upon, for the reason that this drastic departure from our form of government finds expression only in imperfect and incomplete legislation, embodied in a single clause of the County Government Act.

2. For, if it be conceded (as here it may be, though it should be distinctly added that the concession is not a determination of the first proposition) that the legislature has the power which it has attempted to exercise, it is too plain to permit of argument, that, under our system of government, there never can be two equal, co-ordinate law-making powers, each existing without any restrictions the one upon the other. Yet such is the precise case presented, and apparent from an inspection of the sections of the constitution and of the County Government Act above quoted. Upon the one hand, there is conferred upon the board of supervisors, as has been the universal rule, full power to make all laws pertaining to the government of the county. Upon the other hand, this identical power is bestowed by the machinery of the ballot upon the voters of the county. When an ordinance is thus passed by ballot, it has no superior force, but has merely "the same and equal force and effect as though adopted and ordained by the board of supervisors." The right of the supervisors to repeal such ordinances is not taken away, and it is within their power to repeal them one after the other as soon as they shall have been adopted. Upon the other hand, it is equally the right of the people to re-enact them after such repeal. It is the old problem of the irresistible force meeting the indestructible barrier. So far as legislation is concerned, nothing could result but untold confusion. As the two sets of laws, thus creating co-ordinate law-making powers, without check, limitation, or restraint, the one upon the other, cannot, in the nature of our government,

exist, it follows that one or the other of the provisions is invalid and must fall. There can be no hesitation in declaring, in this case, that it must be section 13 of the County Government Act.

By reason of the invalidity of said section, the ordinance adopted in accordance with it is likewise invalid, and the petitioner is entitled to his discharge. It is ordered accordingly.

McFarland, J., Harrison, J., and Temple, J., concurred.

VAN DYKE, J., concurring. — I concur. When the constitution says that any county, city, etc., may make and enforce, within its limits, all such local, police, sanitary, and other regulations as are not in conflict with general law, it uses the terms "counties" and "cities" in their organized condition, or as bodies politic; it does not mean that the people of the county or of the city, in their individual capacity, may do these things.

The terms employed in framing a constitution or in the enactment of laws by the legislature are to be construed as they were generally understood at the time. Our system of government is not that of a pure democracy, but it is a representative republic. This holds throughout, from the smallest subdivision, such as cities and towns, up through counties and states, to the federated or national government. The people, in their individual capacity, do not make or enforce laws to govern them, but they delegate the power to their agents to make laws, and also to construe and enforce them. The power to enforce is coupled with the power to make local, police, and sanitary regulations, recognizing the obvious fact that laws are useless unless they can be enforced. No one will pretend that the people of the county, in their individual and unorganized condition, can enforce any legislative act or ordinance; that must be done by and through the proper officers and agencies recognized by the constitution and general laws of the state. Under the rule, *Expressio unius est exclusio alterius*, the legislature has no authority to create any other public, corporate bodies or agencies than those specified in the constitution, and clothe them with the power to make and enforce local, police, sanitary, and other regulations. (*Ex parte Werner*, 129 Cal. 567.)

Garoutte, J., concurred in the concurring opinion.

BEATTY, C. J., dissenting.—I dissent. The constitution (art. XI, sec. 11) makes a direct grant to every county of the power to "make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws." This grant to the counties of the power of local legislation is, of course, a grant to the people of the respective counties. How they are to exercise the power, whether in their primary capacity by voting at the polls, as in the case of the adoption of a state constitution or of amendments thereto, or by their chosen representatives in boards of supervisors, is purely a matter of legislative regulation, and I cannot see how it is possible, upon any recognized principle of constitutional construction, to deny to the legislature the power to confer upon the qualified voters of the respective counties the right to make local laws which will be valid and effective within their territorial limits.

That the legislature did intend by the act of 1897 to enable the people of the respective counties to enact local ordinances by popular vote is not, and cannot be, denied; but their intention is held to have failed, because they have left it in the power of the boards of supervisors to repeal or alter or supersede the ordinances ratified by popular vote. I do not agree with this construction of the act; but if it were conceded to be correct, or if the legislature had incorporated in the act, in express terms, what the court construes it to mean,—if, in other words, the legislature, instead of stopping with the declaration that "such ordinance, thus adopted, shall have the same and equal force and effect as though adopted and ordained by the board of supervisors," had added an express proviso that the board of supervisors might, in their discretion, alter or repeal ordinances so adopted,—I am not aware of any rule of construction or principle of constitutional law upon which a court could declare the law invalid. It might well be argued that such a law would be inexpedient, or even foolish, but laws cannot be invalidated upon that ground. They are only invalid when the legislature has exceeded its powers in attempting to enact them. Here, upon the construction given to this law, there is no excess of power,—only an absurdity, or supposed absurdity, in the possible consequences to which it may lead. This, however, I conceive to be a more potent argument against the construction placed upon the act, than against the power of the legislature to pass it.

And finally, are the possible consequences of the court's construction of the law so very absurd? Suppose the board of supervisors has the power to repeal an ordinance which has been ratified by popular vote. It is a power which, it may be presumed, will not be exercised in any case of doubtful expediency. The expression of the popular will would have a moral and practical force in any event, and in many cases would operate permanently. As to the confusion and uncertainty which it is feared might result, I see no reason for apprehension. It is conceivable, of course, that there would sometimes be found a board of supervisors determined to thwart the will of the people of their county, and that they would repeal ordinances as fast as the people could pass them, but this, it may be safely asserted, would rarely occur, and in such rare instances the mischief would be less in degree than frequently follows when the legislature undoes what its predecessors have done.

I think the ordinance is in every respect valid, and the prisoner should be remanded.