[Crim. No. 1452.  In Bank.—October 6, 1908.]

Ex Parte JOSEPH YOUNG, on Habeas Corpus.

COUNTY ORDINANCES—ENACTMENT BY VOTE OF PEOPLE UNCONSTITU-
    TIONAL.—Section 13 of the County Government Act of 1897 (Stats.
    1897, p. 452), purporting to authorize the framing of an ordinance
    by the people of the county to be submitted to the voters thereof
    for their adoption, and if a majority were in favor of it, and upon a
    canvass of the vote by the board of supervisors it so appeared, that
    that fact was to be proclaimed by the board and the ordinance
    would then have the same force and effect as though adopted and
    ordained by the board of supervisors itself, is unconstitutional.

Id.—Enactment by Supervisors—Recital of Enactment by People.—
An ordinance which was in the power of the board of supervisors to
pass and which was duly and regularly passed and adopted as an
ordinance of the board and duly published as required by law of
ordinances passed and adopted by the board, is not affected by the
fact that in the enacting clause of the ordinance, which was other-
wise in the form prescribed by section 26 of the County Government
Act for ordinances passed and adopted by the board itself, there was
a recital that it was an ordinance under and in accordance with the
provisions of section 13 of the County Government Act.

Id.—Erroneous Recital Does not Affect Validity.—It is not neces-
sary to the validity of an ordinance of the board of supervisors that
it should state the source from which it derived its authority to enact
it, and so long as the power of enactment exists, an incorrect recital
of the source of the power does not affect the validity of the ordi-
nance.

Id.—Ordinance Need Not Be Entitled.—There is no statute which
requires ordinances of the board of supervisors to be entitled.

Id.—Record of Supervisors—Cannot Be Collaterally Impeached.—
The record of the proceedings of the board of supervisors, which
shows that an ordinance was duly passed and adopted by the affirma-
tive vote of every member of the board, cannot be contradicted in a
collateral proceeding by extrinsic evidence showing the recitals of the
record to be untrue.

Id.—Sale of Intoxicating Liquors in Saloons—Constitutional Law
—Restraint of Trade.—A county ordinance prohibiting the busi-
ness of selling intoxicating liquors in any tippling house, dram-shop,
saloon, bar-room, or other kindred place, within the county, is not
unconstitutional as being in restraint of trade, or in conflict with the
general laws promoting and fostering the viticultural industry of the
state. The county has power to enact such an ordinance under sec-
tion 11 of article XI of the constitution, as a local police regulation.

Id.—Due Process of Law—Taking Property without Compensation.
—Such an ordinance, as to a person engaged in the growing of
grapes and the manufacture of wine, and who had on hand large
quantities of wine at the time of its enactment, is not unconstitu-
tional in that it deprives such person of his property without just
compensation or due process of law.

APPLICATION for a Writ of Habeas Corpus directed to
the Sheriff of the County of Orange.

The facts are stated in the opinion of the court.

C. W. Pendleton, for Petitioner.

S. M. Davis, District Attorney, for Respondent.

LORIGAN, J.—The petitioner was convicted of maintaining in the county of Orange, a saloon where intoxicating liquors were sold contrary to the provisions of ordinance 49 of that county entitled: "An ordinance prohibiting the business of selling . . . intoxicating liquors within the county of Orange," etc., and sues out this writ under which he attacks the validity of said ordinance and the legality of his imprisonment upon conviction for a violation of it.

The validity of this same ordinance was heretofore presented for determination to the district court of appeals for the second appellate district at the instance of one George Yung convicted under it and who likewise questioned its validity upon *habeas corpus* proceedings. That court held the ordinance valid, and, as far as the objections which were there urged are concerned, we think correctly so. (*Application of Yung on Habeas Corpus,* 7 Cal. App. 772, [94 Pac. 594].)

The present petitioner makes the same points here against the validity of the ordinance as were urged there with some additional ones.

The principal claim made as to its validity is that it was passed and enacted under the provisions of section 13 of the County Government Act of 1897 (Stats. 1897, p. 454), which in the case of *Ex parte Anderson,* 134 Cal. 69, [86 Am. St. Rep. 236, 66 Pac. 194], was declared to be unconstitutional by this court. If this were true the ordinance, of course, would be invalid. But we are satisfied that upon the record before us it appears otherwise. The section of the County Government Act in question contemplated the framing of an ordinance by the people of the county to be submitted to the voters thereof for their adoption, and if a majority were in favor of it and upon a canvass of the vote by the board of supervisors it so appeared, that that fact was to be proclaimed by the board and the ordinance would then have the same force and effect as though adopted and ordained by the board of supervisors itself. This is the only action on the part of the board which the section required where the voters themselves selected and adopted the ordinance. The board was not required to pass or adopt it. It only proclaimed the fact that the electors had done so.

It appears, however, from the record before us that the board of supervisors not only proclaimed the fact of the adop-

tion of the ordinance by the electors, but proceeded further and regularly passed and adopted the ordinance as an ordinance of the board of supervisors, and duly published it in the manner that the law required ordinances passed and adopted by the board to be published. Their action was of a dual effect; they proclaimed the ordinance as adopted by the electors and further passed and adopted it as an ordinance of the board itself.

It is true that, following the enacting clause of the ordinance, which is in the form prescribed by section 26 of the act as the enacting clause of ordinances passed and adopted by the board itself, there is the recital "as an ordinance of the county of Orange under and in accordance with the provisions of section 13 of an act entitled: "An act to establish a uniform system of county and township governments, approved April 1st, 1897, it is ordained as follows:" the various sections of the ordinance being set forth.

It is insisted that from the reference to the provisions of section 13 in the above recital accompanying the passage of the ordinance the board must be deemed to have passed it solely by reason of its adoption by the electors and in conformity therewith, notwithstanding that the formalities prescribed for the adoption of ordinances by the board itself were followed. We cannot agree with this reasoning of petitioner. There can be no question but that the board of supervisors, independent of section 13 attempting to confer on the electors the power to adopt an ordinance of this character, had authority itself to pass such an ordinance and that the ordinance in question was passed and adopted in all respects so as to fully exercise that power. Under such circumstances it is of no moment that the board while exercising its unquestionable power, and in the prescribed way, misrecited the source from which such power was derived. It was not necessary to the validity of the ordinance that the board should have at all stated therein the source from which it derived its authority to enact it. There is no provision of law in this state requiring that this be done. It is sufficient that the power to do so exists, and the validity of an ordinance is not affected by the fact that the ordinance incorrectly states a source of power, as long as the power to enact is given. All the reference to section 13 of the act is in the title to the ordinance following

the enacting clause. There is no statute which requires ordinances of the board of supervisors to be entitled. (*Ex parte Haskell*, 112 Cal. 421, [44 Pac. 725].) So that, entitling the ordinance being unnecessary, the entitling portion with its reference to section 13 must be treated as mere surplusage. (See as discussing these propositions, with a citation of authorities in support of them, the *Matter of Yung*, 7 Cal. App. 772, [94 Pac. 594].)

In addition to the point made against the validity of the ordinance in the district court of appeals in the George Yung matter, it is claimed to be shown here, by certain affidavits accompanying the petition for the writ which were not presented on the Yung hearing, that as a fact the ordinance was not passed by the board of supervisors as a separate and independent proposition, but the action of the board was directed solely to the adoption of the ordinance as adopted by the electors under section 13 of the County Government Act.

These are affidavits of three out of five persons who were members of the board when the record of the proceedings of that body shows that the ordinance was passed, and in which they state that the only vote of the board was as to proclaiming the fact of the adoption of the ordinance by the voters, and that no separate or independent vote of the board was taken in adopting said ordinance as an ordinance of the board itself. But the record of the proceedings of the board shows directly to the contrary: that the ordinance was passed and adopted by the affirmative vote of every member of the board. The attempt is by the affidavits to contradict that record; a record of a public body which is expressly required by the statute to be kept in writing and to show by parol evidence that its recitals are untrue. That may not, however, be done. This attack on the record, it is to be observed, is being made in a collateral proceeding and extrinsic evidence is not admissible in such a proceeding to control or contradict the record.

As said in 4 Dillon on Municipal Corporations, sec. 299, "Parol evidence in a collateral action cannot be received to contradict the record of a public corporation required by statute to be kept in writing or to show a mistake in matters as therein recorded." (See, also, *Mayhew* v. *District of Gay Head*, 95 Mass. 129; *City of Logansport* v. *Crockett*, 64 Ind. 319; *Weir* v. *State*, 96 Ind. 311.)

CLIV Cal.—21

The wisdom of this rule is illustrated in this very proceeding because countervailing affidavits of the two other members. of the board and the then district attorney of the county were filed on behalf of the respondent. The affidavits of the members of the board state that in addition to proclaiming the adoption of the ordinance by the electors, it was deemed best by the members of the board to pass and adopt it as an ordinance of the board, and it was accordingly unanimously done. The affidavit of the district attorney was to the effect that being in doubt as to the validity of the ordinance as adopted by the voters he advised the board to pass and adopt it as an ordinance of the board, and the board unanimously did so.

In his traverse to the return of respondent, petitioner set forth that he had for many years been engaged in the business. of growing grapes for the manufacture of wine and manufacturing it; that at the time the ordinance was passed he owned and possessed great quantities of wine which he had then on hand and has now, and which under the terms of the ordinance he is prohibited from selling and is thus deprived of his property; that the ordinance thus operated as a taking of his property for the benefit of the public without just compensation and without due process of law, and for these reasons it is violative of the fourteenth amendment to the federal constitution and of sections 1, 13, and 14 of article I of the constitution of this state; that the ordinance is also in restraint of trade because it discourages the carrying on in this state of the important industry of viticulture and the manufacture of wines and brandies.

As far as the objection is concerned that this ordinance is in restraint of trade, or, in other words, in conflict with the general laws promoting and fostering the viticultural industry of this state, which is really the ground of petitioner's complaint, that point is disposed of adversely to him in *Ex parte Campbell*, 74 Cal. 20, [5 Am. St. Rep. 418, 15 Pac. 318], where a similar proposition was under consideration. This being true the county of Orange could constitutionally pass: "all such local, police, sanitary and other regulations as are not in conflict with the general laws." (Const., art. XI, sec. 11.)

Section 2 of the ordinance in question provides that it shall be unlawful for any person "to keep, maintain or carry

on . . . within the county of Orange . . . any tippling house, dram-shop, cellar, saloon, bar, bar-room, sample room, or any other place by whatever name known, where vinous, spirituous, distilled, malt, mixed or other intoxicating liquors are either directly or indirectly sold, given away or otherwise disposed of." It was upon a complaint drafted in the language of the section that petitioner was convicted and sentenced. This quoted provision of the ordinance is directed solely to prohibiting the selling or dispensing of intoxicating liquors in any tippling house, dram-shop, saloon, bar-room, or other kindred place, "and that the power to license or regulate tippling houses is a constitutional right, which may be enforced as a police regulation through proper legislation, is no longer an open question." (*Ex parte Campbell,* 74 Cal. 20, [5 Am. St. Rep. 418, 15 Pac. 318].)

Nor is legislation of this character subject to the constitutional objections that the person is thereby deprived of his property without just compensation and due process of law.

As said in Black on Intoxicating Liquors, section 83, page 115: "The most serious and weighty objections to the validity of prohibitory legislation have been such as regarded its effect upon rights and property in existence at the time of its enactment. Such a law, as a rule, saves no privileges previously acquired, makes no exception in favor of the disposition of liquor existing in the state at its passage, and although it practically destroys the value of such liquor, as also of breweries and distilleries then in operation, yet provides no compensation for their owners. Yet it is settled, by the immense preponderance of authority, that if a state, by statute or constitutional provision, entirely prohibits the manufacture and sale of intoxicating liquors within its jurisdiction, such enactment is not constitutionally objectionable on the ground of its 'depriving' persons affected of their 'property without due process of law,' notwithstanding its effect may be to destroy a business theretofore lawful, and seriously to impair the value of property held at the time and adapted to the continuance of such business, and that without compensation. Though some slight doubt of the correctness of this view was expressed in some of its earlier decisions, the supreme court of the United States has now explicitly adopted it, and the question must therefore be regarded as finally put at rest."

The cases which counsel cites in support of his constitutional objections to the ordinance are the earlier decisions of the supreme court of the United States which the author in the quotation just made refers to. The later decisions of that tribunal are against the contention of petitioner and conform to the statement contained in the quotation from Black.

Some of these cases are *Mugler* v. *Kansas,* 123 U. S. 623, [8 Sup. Ct. 273]; *Powell* v. *Pennsylvania,* 127 U. S. 678, [8 Sup. Ct. 992]; *Pierson* v. *Kidd,* 128 U. S. 1, [9 Sup. Ct. 6]. In the Mugler case, first cited, in discussing this question, the court said: "It is true that when the defendants in these cases purchased or erected their breweries, the laws of the state did not forbid the manufacture of intoxicating liquors. But the state did not thereby give any assurance, or come under any obligation, that its legislation on that subject would remain unchanged. Indeed, as was said in *Stone* v. *Mississippi,* 101 U. S. 814, the supervision of the public health and the public morals is a governmental power, continuing in its nature, and 'to be dealt with as the special exigencies of the moment may require,' and that 'for this purpose, the largest legislative discretion is allowed, and the discretion cannot be parted with any more than the power itself.' So in *Beer Co.* v. *Massachusetts,* 97 U. S. 32: 'If the public safety or the public morals require the discontinuance of any manufacture or traffic, the hand of the legislature cannot be stayed from providing for its discontinuance by any incidental inconvenience which individuals or corporations may suffer.'"

There are no other points in the case which require consideration. The writ is dismissed and the petitioner remanded to custody.

Shaw, J., Angellotti, J., Sloss, J., Henshaw, J., and Beatty, C. J., concurred.