[Crim. No. 1774.  In Bank.—June 14, 1913.]

## In the Matter of the Application of E. N. ELLSWORTH, for a Writ of Habeas Corpus.

COUNTY—ORDINANCE PROHIBITING SALE OF LIQUOR—FAILURE TO ENACT PENALTY—PRIOR ORDINANCE LICENSING SALE AND ENACTING PENALTY—SUBSEQUENT ORDINANCE NOT AMENDATORY OF FIRST.—An initiative county ordinance which, except in certain enumerated cases, absolutely prohibits the sale of intoxicating liquors in any portion of the county outside of the corporate limits of a city or town, without making any provision to license such sale, but which fails to declare the violation of any of its terms a misdemeanor, or to provide any punishment for such violation, cannot be construed as amendatory of a prior ordinance adopted by the board of supervisors, regulating the sale of such liquors, providing for the licensing thereof, and making it a misdemeanor to sell or give away such liquors without having procured a license so to do.  Nor can the penal provisions of the prior ordinance be deemed as transported into the subsequent initiative ordinance.

ID.—PUNISHMENT ESSENTIAL TO MAKE PROHIBITED ACT A CRIME.—A description, definition, and denouncement of acts necessary to constitute a crime do not make the commission of such act or acts a crime, unless a punishment be annexed, for punishment is as necessary to constitute a crime as its exact definition.

ID.—LICENSEE UNDER PRIOR ORDINANCE CANNOT BE PUNISHED FOR DOING ACTS PROHIBITED BY SECOND ORDINANCE.—A person who has not violated the terms of the prior ordinance, but has complied therewith and holds a license issued by the authorities under that ordinance, cannot be punished on the ground that the acts done by him are in violation of the initiative ordinance, nor can he be punished under section 435 of the Penal Code, making it a misdemeanor to carry on a business for which a license is required, without having procured such license, (1) because he has procured the license called for, and (2) because the initiative ordinance contains no provision for the issuance of a license for the sale of intoxicants.

ID.—LOCAL OPTION—WYLLIE ACT IS CONSTITUTIONAL—ELECTORS DO NOT EXERCISE LEGISLATIVE FUNCTIONS.—The so-called Wyllie Act (Stats. 1911, p. 599) which in effect prohibits the sale etc. of alcoholic liquor in any incorporated city or town, or the portion of any supervisorial district not included within the boundaries of any such city or town, in which at least twenty-five per cent of the electors petition for an election on the question, unless a majority of the electors voting on the question declare themselves in favor of such sale, is constitutional.  Under that act, the electors exercise

no legislative function, the only thing left to the electors of each supervisorial district being to determine whether they will avail themselves of the prohibitions contained in the act.

ID.—CONSTRUCTION OF LOCAL OPTION ACT—DISTRICTS VOTING FOR AND AGAINST LIQUOR LICENSE—POLICE POWER TO REGULATE OR PROHIBIT SALE OF LIQUOR IN DIFFERENT DISTRICTS.—Where one of the territorial units established by the so-called Wyllie Act has voted against licensing the sale of alcoholic liquors, the sale of intoxicants may not be authorized therein even under license; but where another territorial unit has voted for license, this amounts to no more than an expression of the electors' pleasure in the matter, and is not controlling upon the legislative body,—either the board of supervisors, the common council of a municipality, or the electors at large acting through the initiative,—which is authorized, under its police power, to enact a subsequent ordinance, applicable to such territory, regulating or prohibiting the sale of intoxicants therein.

ID.—INITIATIVE ORDINANCE REGULATING SALE OF LIQUOR THROUGHOUT COUNTY—APPLICABILITY TO DIFFERENT DISTRICTS—ELECTORS IN MUNICIPALITIES MAY VOTE AT ELECTION.—Where one supervisorial district of a county, outside of the municipalities therein, at an election held under the so-called Wyllie Act, voted in favor of licensing the sale of liquors in the district, and another such district, at a similar election, voted against licensing such sale, the electors at large of the county, including those residing in municipalities, have authority, through the initiative, to enact a subsequent regulatory or prohibitory ordinance affecting the sale of liquors throughout the entire county. The district which voted in favor of a license, would be subject to the terms of such ordinance, while the district which voted against a license, could not be subjected to the terms of any regulatory license. This fact, however, would not render the ordinance void as to such other parts of the county as are subject to its operation.

ID.—CONSTRUCTION OF ORDINANCE—KEEPERS OF HOTELS.—A provision in a county ordinance authorizing keepers of hotels having at least thirty-five guest-rooms to sell liquors within the county, will be construed as applying only to persons who keep such hotels within the limits of the county.

ID.—UNREASONABLENESS OF ORDINANCE MUST BE CLEARLY SHOWN.—The objection that such ordinance is unreasonable in limiting the right to sell liquors to the managers of hotels containing thirty-five guest-rooms and upward cannot be sustained without a clear showing of the absolute unreasonableness of the limitation.

APPLICATION for a Writ of Habeas Corpus directed to the Sheriff of Sonoma County.

The facts are stated in the opinion of the court.

T. J. Geary, and T. J. Butts, for Petitioner.

Clarence F. Lee, District Attorney, J. E. Pemberton, and J. E. White, for Respondent.

HENSHAW, J.—The undisputed facts are that petitioner is under arrest by virtue of a warrant issued by a justice of the peace of the county of Sonoma, charging him with the criminal violation of the ordinances of the county of Sonoma regulating the traffic in alcoholic liquors. In June, 1912, the supervisors of the county of Sonoma passed their ordinance No. 89 for the licensing of saloons and other places where alcoholic liquors were vended or given away, and regulating the conduct of this business. Petitioner maintains a saloon in the county of Sonoma without the corporate limits of any municipality. He paid for and procured the license contemplated by ordinance 89, and by virtue of this ordinance and of his license thereunder insists that he has violated no law. Ordinance 89, it should be added, makes it a misdemeanor to sell or give away alcoholic liquors "without first having procured a license so to do from the tax-collector of Sonoma County, as required by this ordinance."

In November, 1912, an initiative ordinance was voted upon by the electors of the county, including those electors resident within municipalities, and upon the fourteenth day of November, 1912, the board of supervisors of Sonoma County duly declared this ordinance to have been passed and adopted. This initiative ordinance is here quoted in full:

"An Ordinance of the county of Sonoma, state of California, relating to the Retail Liquor Business of Sonoma County, and limiting the issuing of licenses to *bona fide* hotels.

"The People of the county of Sonoma do hereby ordain as follows:

"No person, corporation, firm or association shall sell, or engage in the business of selling, offering for sale or giving away distilled, fermented, malt, vinous or other spirituous or intoxicating liquors, wines or beer, in any portion of Sonoma County lying without the corporate limits of any city or town of said Sonoma County, except such person, corporation, firm

or association engaged in the business of conducting a *bona fide* hotel, having at least thirty-five separate sleeping apartments properly furnished for the accommodation of guests, and having a dining room at which meals are served at regular hours to boarders and the traveling public; and except physicians, surgeons or chemists, selling distilled, malt, vinous or other spirituous liquors to be used in the due course of medicine; and except manufacturers or producers of such distilled, malt, vinous or other spirituous liquors, selling their own manufacture or production in quantities of not less than one gallon.''

At a glance it will be observed that this initiative ordinance neither declares the violation of any of its terms to be a misdemeanor, nor provides any punishment for such violation. The theory of the respondent answering to this writ is, as is evidenced by the criminal complaint lodged against petitioner; that the earlier ordinance No. 89 was not repealed *in toto* by the initiative ordinance and that the penalties prescribed by ordinance No. 89 may be lifted bodily from that ordinance and inserted in and made applicable to the initiative ordinance. And therefore, so runs the argument, as petitioner is admittedly not conducting a hotel of thirty-five guest-rooms, and is not a person who comes within any of the other exceptions of the initiative ordinance, he is guilty of a violation of the provisions of the initiative ordinance and may be punished therefor by force of the penalty prescribed for a violation of ordinance No. 89. This fairly states the situation touching this particular matter. Other of petitioner's points and arguments attacking the validity of the initiative ordinance and the answers made thereto will be set out in due course.

The effort to transport the penal provisions of ordinance 89 into the initiative ordinance, or, conversely, the attempt to treat the initiative ordinance as but amendatory of ordinance 89, so that the penal provisions of ordinance 89 may be still made to apply, cannot be sustained. So far as the construction of the two ordinances is concerned, one or more of three things must be true (1) that the later ordinance is amendatory of the earlier, (2) that the two ordinances dealing with the same subject matter are to be construed together and harmonized if possible, and (3) that the later ordinance, if

repugnancy exists, repeals the earlier.    As to the first of these, the initiative ordinance does not in terms purport to be amendatory of ordinance 89.    Excepting in its title it makes no reference to licenses, it fixes no fee and does not exact or even contemplate the exaction of a license from those persons whom it permits to vend or give away alcoholic liquors.    It declares simply that no person shall give or sell such intoxicants unless he is either conducting a hotel or is a physician or surgeon or chemist or a manufacturer who sells his own product of quantities of not less than one gallon.    It does not say that these persons so exempted from the inhibition of the statute must procure a license before they sell, nor does it declare or even intimate that if they do so sell without a license they have in anywise committed a crime.    The same is true of all others who are forbidden to sell.    The declaration is that they shall not sell.    If they do sell their acts are illegal, but their acts are not denounced as criminal.    It should be unnecessary to point out the tremendous distinction that exists between acts which are simply illegal and for which therefore a civil liability alone results, and those which are criminal, for which penal as well as civil liability arises. A crime is an act committed or omitted in violation of a law forbidding or commanding it, ''and to which is annexed, upon conviction, either of the following punishments: death, imprisonment, fine, removal from office, or disqualification to hold and enjoy any office of honor, trust or profit in this state.''    (Pen. Code, sec. 15.)    A description, definition, and denouncement of acts necessary to constitute a crime do not make the commission of such act or acts a crime, unless a punishment be annexed, for punishment is as necessary to constitute a crime as its exact definition.    (*People* v. *McNulty,* 93 Cal. 427, [26 Pac. 597, 29 Pac. 61].)    There is in this statute therefore not only no crime declared, but there is not even an intimation that it was intended to declare a crime.    So, whether the initiative ordinance be treated as amendatory of ordinance 89, or whether it be construed with it as dealing with the same subject matter, the result is the same.    The petitioner has not violated the terms of the original ordinance 89, but has complied with all those terms and holds a license issued by the authorities under that ordinance. If it be said that he is violating the provisions of the initia-

tive ordinance, it must be answered that the initiative ordinance, neither in substance, in terms nor in reasonable intendment, either denounces the act as a crime or contemplates criminal punishment for it. Nor is the situation aided by the state law (Pen. Code, sec. 435), which declares that every person who owns or carries on any business, trade, profession or calling for the transaction or carrying on of which a license is required by any law of this state, without taking out or procuring the license, is guilty of a misdemeanor; 1. Because the petitioner has procured the license called for; and 2. Because the initiative ordinance is not in any of its terms a license ordinance, does not prescribe a license, fix a fee, or, as has been said, except in the allusion contained in the title of the act, does not even contemplate the issuance of a license to those persons who it declares may engage in the business of selling intoxicants. *Ex parte Christenson*, 85 Cal. 208, [24 Pac. 747], relied on by respondent, dealt with a license ordinance which in terms required a payment of a specified license fee and made the conduct of the business without the procuring of such a license a misdemeanor, punishable by fine and imprisonment. The argument was not that the ordinance did not fix a penalty, but that it fixed a penalty in conflict with that of the general state law found in Penal Code, section 19, and this court said: "If for example the order provided no punishment whatever for doing business without a license, but merely provided what the license should be, it would be valid, and the statute would supplement it by making the failure to comply with the order a crime and providing the penalty." But as has been repeatedly pointed out, the ordinance here not only does not provide for a license fee, but does not provide for a license at all. In *Richter* v. *Lightston*, 161 Cal. 260, [Ann. Cas. 1913B, 1028, 18 Pac. 790], another case upon which respondent relies, the ordinance under consideration established limits within which retail and wholesale liquor licenses could be granted. Other ordinances of the city provided in terms for the issuance of such liquor licenses, and the contention advanced upon the part of the petitioner in mandate seeking the issuance of a license was that the ordinance establishing the limits within which liquor licenses should be granted was void as a police regulation, in that it

fixed no penalty for a violation of its terms. That argument was met by this court in the following language: "Its terms, it will be noted, are prohibitory. It forbids the issuance of a license within the inhibited district. It is the province of other ordinances to impose fines and penalties for the conduct of the prohibited business without a license, and in the case of the city of San Jose the charter itself makes such provision." It would be competent therefore for the supervisors of Sonoma County to remodel their liquor license ordinance, under the intimations contained in this initiative ordinance, and to penalize for a violation of its terms. It would be competent also for the supervisors to make general provision whereby the violation of the terms of any of its ordinances should be declared a misdemeanor. But so far as we are at present advised this has not been done.

What has been said disposes of the criminal charge against this petitioner. But, as has been intimated, the defect may be cured in future proceedings by the adoption of a suitable ordinance by the supervisors. In view of other objections advanced by petitioner and going to the validity of the initiative ordinance as a whole, a consideration of these propositions may be advantageously had, for the disposition of questions which are not only in this case but which are certain, if not disposed of, to arise in other cases.

It appears that in the May preceding the November at which the initiative ordinance was adopted, an election was held under the Wyllie law in that part of the first supervisorial district outside of the municipalities therein, and at such election the district voted in favor of licensing the sale of liquors in the district. In the succeeding June a similar election was held in the second supervisorial district, which voted against the licensing of liquors. It is urged and argued that the people of the entire county could not adopt the initiative ordinance which here they did adopt under section 4058 of the Political Code. The argument in this behalf is that as the first supervisorial district had voted in favor of licensing the sale of liquors, its determination in this respect could not be controlled or modified by any general county ordinance; that the second supervisorial district having voted against the sale of liquors, no county ordinance could authorize the sale of liquors within this territory, either with or without license.

And, finally, it is argued that under the Wyllie law the supervisorial districts without the limits of municipal corporations are made the units for the exercise of local option, and that it does violence to this general state law to permit the county at large, and in particular the electors of the county residing within municipalities, to control these units by such an initiative ordinance. Support for this view is sought in *Ex parte Zany*, 20 Cal. App. 360, [129 Pac. 295]. *Ex parte Zany* did not come under the review of this court, and for the reasons given by this court in denying a petition for a hearing in that matter, it could not have come before this court. (See *Ex parte Zany*, 164 Cal. 724, [130 Pac. 710].) That decision, therefore, cannot be regarded as having received even the tacit sanction of this court.

The force of petitioner's objections really rest upon a construction of the Wyllie Act—its meaning and its scope. In *Ex parte Beck*, 162 Cal. 701, [124 Pac. 543], this court considered at length objections raised to the constitutionality of the act holding it to be constitutional. In the course of the discussion it is there said: ''The act involved in this proceeding is practically one prohibiting the sale, etc., of alcoholic liquor in any incorporated city or town of the state, or the portion of any supervisorial district not included within the boundaries of any such city or town, in which at least twenty-five per cent of the electors petition for an election on the question, unless a majority of the electors voting on the question declare themselves in favor of such sale, etc. By it, the legislature practically determined that it is inexpedient to allow the sale of such liquor in any such territory when the sentiment of the inhabitants thereof, as shown by the expression of its electorate, is to so large an extent opposed thereto, and denounced the sale under such circumstances as a crime. . . . The act calls for no legislation on the part of the supervisorial district, and the vote of the electors thereof does not make the law at all. The electors thereof perform no legislative function whatever. The act is wholly one of the state legislature, in force all over the state so far as the right of the people of the respective localities mentioned to avail themselves thereof is concerned, the only thing left to the electors of each such locality to determine being whether they will avail themselves of the prohibitions contained there-

in.'' Here is the key to the construction and scope of the Wyllie Act. That this act was drawn with circumspection and care, its history leaves no doubt. It is safe to say that whatever is found therein is designedly there; whatever is omitted therefrom was purposely excluded. It does not, so far as the electors of its units are concerned, vest in them legislative power, but it does in a limited sense confer upon them the power to fix their administrative *status*. Limited in this, that while upon a unit which has voted no license, the sale of intoxicants may not be imposed even under license, yet when another community has voted for license, this amounts to no more than an expression of the electors' pleasure in the matter and is not controlling upon the legislative body, either the board of supervisors, the common council of a municipality, or the electors at large acting through the initiative. In this state and under our constitution and laws, the power to prohibit the liquor traffic coexists with the power to regulate it. (*Ex parte Young,* 154 Cal. 317, [22 L. R. A. (N. S.) 330, 97 Pac. 822].) That power is not in the least impaired by the expression of the electors' preference for license. The control of this matter, originally vested in the supervisors, has not by the Wyllie Act been either taken away or modified, and it is still within the power of the supervisors, where a district has voted ''wet,'' to pass such regulatory or prohibitory ordinance as they may deem best. That the law in this respect is one-sided may at once be conceded, but this concession does not militate against its validity, for the last section of the act itself declares that ''Nothing in this act shall be construed as putting any limitations, except such as are positively stated herein, upon the police powers now possessed by cities, towns and counties.'' (Wyllie Act, Stats. 1911, sec. 22, p. 605.)

The same may be said of the argument that it is unreasonable to permit the electors of a municipality, having at the most but very limited and indirect interest in the liquor question of the outlying supervisorial districts to control by their votes the question of regulating and prohibiting that traffic when these regulations in no way affect them, their municipality, or the liquor traffic conducted therein. It is quite true as urged, that the electors in the outlying portions of supervisorial districts have quite as much concern with the liquor

traffic of municipalities as the electors of municipalities have with the liquor traffic in the outside districts, and it is foreign to the conception of autonomous government and home rule that electors not interested should be permitted to have a voice in and to a great extent control such a matter of purely local concern. But the same answer must be made to this argument, that it is addressed to what is conceived to be the unjust operation of the law and not to the validity or invalidity of the law itself. Supervisors elected from municipalities within a county have the same power of control over the districts outside of their municipality, and under the initiative the only change wrought is that, that which the supervisors, representing the whole county could do, it is now permitted the electors of the whole county themselves to do.

It follows herefrom that the first supervisorial district which voted in favor of licensing the sale of liquors will be subject to the terms of such regulatory or prohibitory ordinance as the county of Sonoma may adopt; that the second supervisorial district, which voted against the licensing the sale of liquors, cannot be subjected to the terms of any regulatory license. But this fact, of course, does not render the ordinance void as to such other parts of the county as are subject to its operation.

One or more matters of minor consequence still merit consideration. It is pointed out that the initiative ordinance is vague and uncertain in this, that it authorizes keepers of hotels having at least thirty-five guest-rooms to sell liquor within the county, but does not attempt to say that the hotels themselves shall be within the county, so that under the terms of the ordinance one who keeps such a hotel in the city and county of San Francisco is thereby authorized to vend liquors in Sonoma County. Such of course was not the meaning of the ordinance, though it must be conceded that in this respect it is inartificially drawn.

The objection that the ordinance is unreasonable in limiting the right to sell liquors to the managers of hotels containing thirty-five guest-rooms and upward cannot be sustained without a clear showing of the absolute unreasonableness of the limitation. (*Grumbach* v. *Lelande,* 154 Cal. 684, [98 Pac. 1059]; *In re Kidd,* 5 Cal. App. 159, [89 Pac. 987]; *In re*

*Murphy,* 8 Cal. App. 442, [97 Pac. 199] ; *Ex parte Burke,* 160 Cal. 300, [116 Pac. 755].)

For the reasons herein given the prisoner is discharged.

Angellotti, J., Shaw, J., Lorigan, J., Melvin, J., and Sloss, J., concurred.