## No. 12,809.

### W. T. PEGUES, TAX COLLECTOR, VS. O. P. RAY.

1. A commercial drummer, or canvasser, who goes out on the road soliciting orders for his house, whether it be located in or out of the State, and who takes with him samples of the goods or wares his house deals in, is not a "traveling vendor" within the meaning of Sec. 13 of Act No. 150 of 1890.

2. A business house, located in one of the towns or cities of the State, taking out the necessary licenses there, may send its drummers or canvassers out, with samples, to take orders in other towns and parishes without becoming subject to the payment of a State, parish or municipal license in such other towns and parishes.

3. The negotiation here of sales of goods which are in another State for the purpose of their introduction in this State is interstate commerce.

APPEAL from the Ninth Judicial District Court for the Parish of De Soto. *Hall, J.*

*J. W. Parsons* (*Charles Wheaton Elam* of Counsel) for Plaintiff, Appellee.

*Wise & Herndon* for Defendant, Appellant.

Argued and submitted May 17, 1898.
Opinion handed down June 13, 1898.

The opinion of the court was delivered by

BLANCHARD, J. The Wrought Iron Range Company, a corporation domiciled in the city of St. Louis, Missouri, is engaged in the business of the manufacture and sale of cooking stoves and ranges.

It sent agents to Shreveport, Louisiana, engaged a warehouse or place of business there, and shipped hither in carload lots its wares.

The ranges thus consigned to the Shreveport house were shipped in original packages, remained in such packages, and as sales were effected or orders received for goods they were delivered in the original packages to the purchasers.

A State license for the occupation of retail dealer in stoves and ranges was taken out at Shreveport.

The company sold goods at retail in the house at Shreveport and put drummers in the field to canvass the parishes of that section of the State.

Defendant herein, O. P. Ray, was sent to De Soto parish and under him were several canvassers, who were dispatched through the parish to solicit orders.   As orders were taken they were sent in to Ray at Mansfield, the county seat of the parish, who forwarded the same to R. F. Dixon, the general manager of the company at Shreveport, and he would fill the orders by shipping the goods in the original packages to Ray at Mansfield, and on their receipt Ray would load the stoves, without breaking the packages, on his delivery wagons and deliver the same to the parties giving the orders.

Ray and the drummers under him were in the parish temporarily only.

The drummers, or soliciting agents, each used a wagon with a stove and its attachments therein as an exhibit or sample of the kind and quality of goods they were drumming for.   No stoves were sold from the wagons of the canvassers.

They took orders only for subsequent delivery by other parties in the employ of the company.

No large stock of the ranges was kept in the warehouse at Shreveport, but new supplies were ordered by Dixon from the manufactory at St. Louis as needed.

The business was started at Shreveport in 1897.   Ray and the canvassers under him began soliciting orders in De Soto parish in February, 1898, and by the twentieth of the month thirty-four orders had been taken.

The tax collector of De Soto parish demanded of Ray the payment of a license tax and took the present proceeding to enforce its payment.

The proceeding is summary in character under the provisions of Sec. 18 of Act No. 150 of 1890, which authorizes action by rule to show cause within five days why the license claimed should not be paid, etc.

The petition of the tax collector, mover in rule, sets forth that the defendant is a traveling vendor of stoves and ranges, selling and delivering his wares throughout the parish as agent for the Wrought Iron Range Company of St. Louis, Missouri, and that as such he owes a license of two hundred dollars to the State and parish, which has been demanded and refused.   He asks judgment making the

rule absolute and condemning defendant to pay the license, with penalties, etc.

The statute under which the tax collector proceeds is Sec. 13 of Act No. 150 of 1890, and is as follows:

"That all traveling vendors of stoves, lightning rods and clocks shall pay a license annually of two hundred dollars in each parish of the State."

Defendant resists the payment of this license on the ground (1) that he is the agent and representative of the Wrought Iron Range Company, which is authorized to conduct a mercantile business at the city of Shreveport; and, if this defence be not good, (2) that the attempt to impose this tax upon him is an interference with interstate commerce and repugnant to the third paragraph of the eighth Section of Art. 1 of the Constitution of the United States.

The trial judge held that defendant and the canvassers under him are peddlers, and not merchants in the ordinary sense of the word; that they are "traveling vendors," within the meaning of the statute, notwithstanding the warehouse, or place of business, or depot of supplies at Shreveport; and that having such establishment in the State, their goods, when shipped here, become liable to the tax laws of the State.

From a judgment against him defendant prosecutes this appeal.

A commercial drummer, or canvasser, who goes out on the road soliciting orders for his house, whether it be located in or out of the the State, and who takes with him samples of the goods or wares his house deals in, is not a "traveling vendor" within the meaning of the statute quoted.

"Traveling vendor" is synonymous with "peddler." A traveling vendor is a peddler on an enlarged scale. The term seems to convey that idea. Nevertheless he is a peddler because he carries wares which he sells and delivers at the same time, going from place to place for the purpose.

Webster's dictionary defines a peddler as "a traveling trader; one who carries about small commodities on his back or in a cart or wagon and sells them."

Bouvier's Law Dictionary says:

"A peddler is a person who travels about the country with merchandise for the purpose of selling it."

And Anderson's Dictionary of Law declares him to be "a person

who travels from place to place and carries about with him on horse-back or in a vehicle articles of merchandise for sale."

A traveling vendor, then, is one who carries about with him the articles of merchandise which he sells. That is to say, the identical merchandise he sells he has with him and delivers at the time of sale.

His vocation is quite different from that of the drummer, who carries only samples of his wares as exhibits, and takes orders for the future delivery of merchandise of their kind and quality, or of similar kind and quality.

The statute under consideration imposes no license on the drummer with his samples taking orders, while it does on the traveling vendor of certain kinds of goods.

Tax laws are to be construed strictly. Defendant and the canvassers under his orders were all employees of the Wrought Iron Range Company. This company was the vendor, the parties referred to its salesmen. They took the orders and transmitted the same to the company, who shipped the goods to fill the orders. In soliciting orders they did not carry about with them the goods actually sold. The evidence is the reverse. It is true, in two instances orders were taken for ranges where delivery was made on the same day. But this is explained by defendant's statement, that his men had previously taken several orders for ranges, which he (defendant) had ordered from the Shreveport house to fill, but two of the parties were, on inquiry, found to be irresponsible, and, in consequence, delivery to them was refused, and having the two ranges on hand at Mansfield, they were delivered immediately to two other parties, whose orders were substituted for those declined. Besides, even in these instances, the drummers who took the orders did not have the ranges with them, and the delivery was made by other parties. In all the other cases of orders taken, a period of sixty days for delivery was stipulated for, though, as a matter of fact, the delivery was made much sooner, for the distance is not great to Shreveport, where the stoves were in stock, and the trains passed to and fro each day.

Nor does the fact that because defendant, as agent of the selling company, undertook to deliver the stoves in his wagons at the homes of the purchasers necessarily bring him within the definition of " traveling vendor." The facts, as disclosed by the evidence, do not make out that kind of a case.

37

The crucial facts are, the orders were taken by the drummers who merely had samples of the goods sold, these orders were filled from the Shreveport house, and the goods were shipped to the depot at Mansfield. From there they were, pursuant to agreement, transported by defendant's or the company's wagons to the place designated.

It can not be said, under these circumstances, that the ranges were incorporated into the general mass of property in the parish of De Soto prior to their delivery, so as to make them subject to taxation there in the hands of the company's agents.

They only became so incorporated after delivery to the parties purchasing. See McClellan, Tax Collector, vs. Pettigrew, 44 La. An. 357.

It may be that the stock of these goods kept at Shreveport became incorporated in the general mass of property of that parish, and became subject to taxation there. But that can not avail plaintiff, who is tax collector of another parish. A tax was imposed at Shreveport, a State license to do business was taken out there, and the presumption is that the company's stock of goods went on the assessment rolls there for ordinary *ad valorem* taxation.

A business house located at the city of Shreveport, taking out the necessary licenses there, may send its drummers and canvassers out with samples to take orders in other towns and parishes without becoming subject to the payment of a State, parish or municipal license in such other towns and parishes. If it were otherwise, the enterprising practice of sending drummers out from the large cities would be broken up, thousands of persons thrown out of employment and trade, and commerce greatly impeded.

If it be true, as intimated by our learned brother of the court *a qua*, this house at Shreveport was only a warehouse for the storage of goods, and its existence and maintenance there did not make the company, and defendant, its employee, merchants in the ordinary sense of the word, then must these goods, kept in the original packages, be held objects of interstate commerce in the strictest sense of that term, stopping merely at Shreveport on their way to a delivery destination contracted for by persons engaged in introducing in this State articles of goods manufactured in another State.

The negotiation here of sales of goods which are in another State for the purpose of their introduction in this State is interstate commerce. And this court said, through Mr. Justice Watkins, in Sim-

mons Hardware Company vs. Sheriff, 39 La. An. 853: "If the person sought to be taxed, or of whom a State license is required, be one who is merely passing through the State, or one coming into it for the temporary purpose of selling by sample goods to be imported from another State, or if the goods, the sale of which is thus negotiated, are imported into the State from another State and not yet become a part of the mass of property therein, neither the person nor property have become subjected to the taxing power of the State, and any State law imposing such a license tax is repugnant to the Federal Constitution and void."

The principle thus announced is sustained in a long line of decisions by the Supreme Court of the United States, beginning with the early and leading case of Brown vs. Maryland, 12 Wheat. 419, where it was luminously stated by Chief Justice Marshall himself, and extending down to Brennan vs. Titusville, 153 U. S. 289, among which decisions should be especially noted that of Robbins vs. Shelby County Taxing District, 120 U. S. 489.

Our conclusion is defendant is not subject to the license tax sought to be imposed, and, accordingly, it is ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed and plaintiff's demand be rejected at his costs in both courts.