[Crim. No. 1825. In Bank.—March 2, 1915.]

In the Matter of the Application of JOHN COOMBS for a Writ of Habeas Corpus.

INTOXICATING LIQUORS—POLICE POWER—RESTRICTIONS ON SALE IMPOSED BY BOARDS OF SUPERVISORS.—Notwithstanding the legislative policy in the state of California of fostering and encouraging the manufacture and sale of native wines, the board of supervisors of a county, in the exercise of its police powers, may impose upon the sale within such county of vinous and other liquors containing alcohol, any restrictions which are not in conflict with general laws. In this state the police power is efficient for the regulation or even for the prohibition of the liquor traffic by boards of supervisors within their respective counties.

ID.—ORDINANCE OF LOS ANGELES COUNTY—PROVISIONS FOR LICENSING IN COUNTY PRECINCTS—ELECTION TO DETERMINE QUESTIONS OF ISSUANCE OF LICENSES—MANUFACTURING OF WINE IN NON-LICENSE PRECINCT.—Ordinance No. 245 (new series), of Los Angeles County, enacted in 1910, providing *inter alia* that "no person shall sell any intoxicating liquors in any quantity whatsoever, except at a fixed place of business, or without first obtaining a license therefor under the provisions of this ordinance," nor shall, "in any voting precinct

in which a retail liquor dealer's license cannot be obtained, solicit, take or receive any order for the sale or delivery of any intoxicating liquors; provided that nothing herein contained shall be deemed to prohibit the soliciting, taking or receiving of such orders by a duly licensed winery keeper or hotel or restaurant liquor dealer at his licensed place of business;" and that "no application for either a wholesale or retail liquor dealer's license, or a winery keeper's license, or a hotel or restaurant liquor dealer's license, shall be granted unless at the last preceding general election at which the question of granting licenses of the kind applied for was submitted to the people, the majority of the votes cast upon the question of granting licenses of the kind applied for, in the voting precinct in which the business is proposed to be carried on, was in favor of granting such licenses," is not invalid in that it attempts to prohibit the conducting of the lawful industry of manufacturing wines. Properly construed, the ordinance places no ban upon the manufacture of wines within a non-license precinct, nor the sale of such products therein for delivery in territory outside that part of Los Angeles County in which such traffic is prohibited, and is within the legitimate power of the board of supervisors to enact.

Id.—WYLLIE ACT—ORDINANCE PROVIDING DIFFERENT SCHEME OF LOCAL OPTION.—Such ordinance is not invalid on the ground that it provides a different scheme of local option from that authorized by the so-called "Wyllie Act." That act only limits the powers of the supervisors in territory that has been voted "dry"; in other parts of a county the police power of the board of supervisors is undiminished, and there is nothing in the act which prevents the board from exercising such power in any part of the county which has not been subjected to the prohibitive force of that law.

Id.—SUBMISSION OF QUESTION OF ISSUANCE OF LICENSES TO VOTERS OF PRECINCTS.—The board of supervisors had authority, under the general power given by section 11 of article XI of the constitution, to submit to the voters of the various precincts in the county, as provided in such ordinance, the questions relating to the issuance of licenses in such precincts.

Id.—ORDINANCE NOT DISCRIMINATORY AGAINST MANUFACTURER OF WINE. Assuming the possibility that in a particular precinct retail liquor licenses might be issued but winery keeper's licenses might be denied, and consequently wines of foreign manufacture might be sold, while those made in the precinct could not be disposed of, that fact would not necessarily destroy the ordinance by rendering it discriminatory against a manufacturer of wine in such precinct.

Id.—ORDINANCE DOES NOT PROHIBIT DISPOSAL OF GOODS LAWFULLY POS-SESSED—INTERSTATE COMMERCE.—Such ordinance is not invalid as an attempt to prohibit the disposal of goods lawfully possessed. Its operation being confined to the territory under the regulative authority of the supervisors of Los Angeles County, a manufacturer of

wine, or his employee, is at liberty to dispose of his products at any place outside of that area. Nor does the ordinance by its terms prevent the shipment of goods in the practice of interstate commerce.

Id.—Fourteenth Amendment of Federal Constitution not Violated. Being a legitimate exercise of police power, the ordinance does not violate the provisions of the fourteenth amendment to the constitution of the United States.

APPLICATION for a Writ of Habeas Corpus directed to the Sheriff of Los Angeles County.

The facts are stated in the opinion of the court.

Byron C. Hanna, Joseph Musgrove, Charles W. Lyon, and W. S. Wright, for Petitioner.

A. J. Hill, County Counsel, J. D. Fredericks, District Attorney, and Percy V. Hammon, Deputy District Attorney, for Respondent.

MELVIN, J.—Petitioner has been arrested upon a warrant issued as the result of the filing of a complaint wherein he is charged with violating a certain ordinance of the county of Los Angeles. More specifically the charge is that John Coombs did "at a place other than a fixed licensed place of business for the sale of intoxicating liquors, to wit: in Lamanda Park Precinct, in Los Angeles County, solicit, take, and receive an order for the delivery of, and did then and there deliver intoxicating liquors, to wit, three (3) gallons of wine to one A. L. Bradley, at his permanent residence in Lamanda Park Precinct, said precinct being then and there a voting precinct in which a retail liquor dealer's license was not and could not be obtained."

The ordinance in question was adopted by the supervisors of Los Angeles County in 1910. It is known as ordinance No. 245, (new series) and is entitled "An Ordinance Regulating and Licensing Certain Kinds of Business." By the first section of this by-law it is made unlawful for any person to conduct any business specified therein without first procuring the prescribed license. By section 18 the term "intoxicating liquors" is defined and "vinous liquors" are included within the definition. It is provided among other things, in the 19th section that: "No person shall sell any

intoxicating liquors in any quantity whatsoever, except at a fixed place of business, or without first obtaining a license therefor under the provisions of this ordinance. No person shall, in any voting precinct in which a retail liquor dealer's license cannot be obtained, as hereinafter provided, solicit, take, or receive, any order for the sale or delivery of any intoxicating liquors; provided that nothing herein contained shall be deemed to prohibit the soliciting, taking, or receiving of such orders by a duly licensed winery keeper or hotel or restaurant liquor dealer at his licensed place of business.''

Section 22 prescribes the method to be adopted by those seeking licenses and the next section establishes the procedure to be followed by the board of supervisors in hearing and passing upon such applications. That part of the section which requires particular examination by us in the decision of the questions arising in this proceeding is as follows: ''No application for either a wholesale or retail liquor dealer's license, or a winery keeper's license, or a hotel or restaurant liquor dealer's license, shall be granted unless at the last preceding general election at which the question of granting licenses of the kind applied for was submitted to the people, the majority of the votes cast upon the question of granting licenses of the kind applied for, in the voting precinct in which the business is proposed to be carried on, was in favor of granting such licenses. For the purposes of this ordinance the respective voting precincts of the county and the boundaries thereof shall be deemed to continue unchanged from any general election until the next general election thereafter.''

Section 25 directs that at every general election four questions shall be presented on the ballot to the electors in each precinct of the county outside of incorporated cities and towns. By their answers to these questions the voters of each precinct express their desires with reference to the granting of ''wholesale and retail liquor dealers' licenses,'' winery keepers' licenses,'' ''hotel and restaurant liquor dealers' licenses,'' and ''licenses for public billiard rooms,'' within the precinct.

Section 29 defines a ''retail liquor establishment.'' It is not necessary to quote the definition. It is sufficient to note that no part of it gives permission to solicit orders for liquor at any place except upon the premises devoted to the retail business. The section also contains the following language:

"Every person who, either as owner, agent or otherwise, conducts or carries on or assists in conducting or carrying on a retail liquor establishment as herein defined, or who sells intoxicating liquors in any manner not included in the definitions of the terms hotel liquor dealer, restaurant liquor dealer, winery keeper or wholesale liquor dealer as herein defined, is, for the purposes of this ordinance, declared to be carrying on the occupation of a retail liquor dealer, except as provided in section 36 hereof."

The exception stated in the above quotation is not material to this discussion.

Section 31 defines a winery to be: "a place for the manufacture and sale of vinicultural products manufactured in this county from grapes grown in this state, when sold by the manufacturer in quantities of not less than two gallons, such minimum quantity to be all delivered at one time, and when sold on the premises where manufactured and not permitted to be drunk in, upon or about said premises; and any person who, either as owner, agent or otherwise, conducts or carries on or assists in conducting or carrying on a winery, is for the purposes of this ordinance, declared to be carrying on the occupation of a winery keeper."

It is alleged in the petition that John Coombs is an employee of the Sierra Madre Vintage Company, a Californian corporation conducting the business of manufacturing wine, in Lamanda Park Precinct, from grapes grown in California; that said corporation has been thus engaged for more than a quarter of a century; and that the acts charged in the complaint were committed by petitioner as an employee of said corporation, the wine sold and delivered having been manufactured by his employer from grapes grown in California. It is also averred that on April 1, 1913, the board of supervisors denied the application of the Sierra Madre Vintage Company for a license, "solely and only for the reason that a majority of the voters in the precinct in which the said winery is situated, had, at the previous general election, voted against the issuing of winery licenses."

The ordinance is attacked by petitioner, who advances the following reasons for its asserted invalidity:

"First: That the ordinance contravenes the express public policy of the state of California;

Second: That it attempts to prohibit the conducting of a lawful industry;

Third: That the enactment of such an ordinance by the board of supervisors is not authorized;

Fourth: That it is in conflict with the provisions of the general law in that it provides a different scheme of local option from that authorized by the Wyllie Local Option Law;

Fifth: That it unlawfully discriminates against products manufactured in Los Angeles County and against grapes grown in the state of California;

Sixth: That it is unreasonable in that it attempts to prohibit the disposal of goods lawfully possessed:

Seventh: That it attempts to prevent the shipment of such goods in interstate commerce;

Eighth: That it violates the provisions of the Fourteenth Amendment to the Constitution of the United States.''

It is not seriously contended that the complaint fails to state an offense under the ordinance. True there is no pleading in the terms of the ordinance itself, of the exceptions to the rule that no soliciting may be done by a dealer in liquors, but there is an averment that the acts of the petitioner were done at a place ''other than a fixed place of business for the sale of intoxicating liquors.'' This sufficiently excludes him from classes of dealers who may solicit patronage because even such licensed merchants or hotel or restaurant keepers may not solicit business except at their fixed places of business.

At the outset petitioner concedes that the court is not bound to consider the ordinance by any particular state of facts presented in the petition for the writ of *habeas corpus,* but his counsel contend that nevertheless we should test the ordinance by the allegations of the petition because the alleged facts are necessarily within the scope of the by-law. This question need not trouble us because, conceding the full force of the petitioner's argument in this regard, we feel constrained to uphold the ordinance upon the authority of Californian cases.

Petitioner calls the attention of the court to the unvarying legislative policy in California of fostering and encouraging the manufacture and sale of native wines. By resolutions, by the offering of prizes for the best wines, by the establishment and generous support of a department of viticulture in the University, and by many other methods the policy of

the state to encourage this industry has been established. Petitioner argues, therefore, that the ordinance before us is opposed to public policy in that, according to his interpretation, it destroys a wine manufacturing industry in the precinct in which his employer's place of business is located. All that is said in the able briefs of counsel for petitioner regarding the state's policy toward the growers of grapes and the producers of wine is true. It is true that in reliance upon that policy vast sums have been expended. It is true that tens of thousands, of citizens derive their means of livelihood from this legitimate business of making and selling wines. But it is equally true that in the exercise of its police power the board of supervisors of a county may impose upon the sale within such county of vinous and other liquors containing alcohol, any restrictions which are not' in conflict with general laws. If, therefore, upon a reasonable construction of the ordinance it appears to us to be a police measure, it will be our duty to sustain it. In this state the police power is efficient for the regulation or even for the prohibition of the liquor traffic by boards of supervisors within their respective counties (*Ex parte Campbell,* 74 Cal. 20, [5 Am. St. Rep. 418, 15 Pac. 318]; *Ex parte Young,* 154 Cal. 322, [22 L. R. A. (N. S.) 332, 97 Pac. 822]; *Matter of Application of Ellsworth,* 165 Cal. 685, [133 Pac. 272]; *Matter of Application of Anixter,* 166 Cal. 763, [138 Pac. 353].) We might cite scores of other authorities to the same effect. In the opinion delivered for this court by Mr. Justice Henshaw in the matter of Anixter's application he used the following language: ''It is, of course, well settled that a state and its subordinate municipal agencies may pass laws, even laws penal in their character, regulating and indeed prohibiting the sale of intoxicating liquors, or the soliciting of orders, or the making of contracts for the sale of such liquors.'' (Citing many authorities.)

Examining the ordinance with reference to the contention that it attempts to prohibit the conducting of a lawful industry we find no such result. It does not prevent the manufacture nor the sale of wine. True, the language of the section under which the petitioner was charged is rather general. It forbids a citizen under the conditions set forth to ''solicit, take or receive any order for the sale or delivery of any intoxicating liquors'' in the voting precinct. Similar but

even more emphatically prohibitory language was used in the ordinance considered in the proceeding with reference to Anixter's application, but this court interpreted the language of the by-law in the light of the police power of the town of Winters. It was held that since the utmost power of the municipality extended not to the control of those beyond its borders but to the regulation of the liquor traffic within its limits, the ordinance in question only prevented soliciting and the making of contracts of sale in the town for the delivery of intoxicants therein. That authority is entirely applicable to the language of the ordinance here under review. So interpreted it places no ban upon the manufacture of wines within the precinct nor the sale of such products therein for delivery in territory outside that part of Los Angeles County in which such traffic is prohibited.

Under the above interpretation of the ordinance there is no force in petitioner's assertion that the enactment of such an ordinance is not within the legitimate power of the board of supervisors.

The by-law is also attacked upon the ground that it provides a different scheme of local option from that authorized by the "Wyllie Law." In the construction given to the "Wyllie Law" in the opinion of this court in *Matter of Application of Ellsworth,* 165 Cal. 685, [133 Pac. 272], it was decided that the "Wyllie Law" only limited the powers of the supervisors in territory that had been voted "dry"—that in other parts of a county the police power of the board of supervisors was undiminished. Nothing in the "Wyllie Law" prevents a board of supervisors from exercising this power in any part of the county which has not been subjected to the prohibitive force of that law. In *Davis* v. *Board of Supervisors of Merced County,* 7 Cal. App. 572, [95 Pac. 170], the district court of appeal had under examination an ordinance providing that a majority of the voters living in the precinct within one mile of a proposed saloon might by protest prevent the issuance of a license to sell liquor. The ordinance was held to be a valid exercise of the police power. In *Denton* v. *Vann,* 8 Cal. App. 677, [97 Pac. 675], the ordinance considered was very similar to the one before us. It furnished exactly the same plan for ascertaining the wishes of the electors in each precinct. The ordinance also provided that no license would be granted in pre-

cincts in which a majority of the voters had declared against its issuance. The learned district court of appeal held that the ordinance did not by its terms delegate any legislative power but established a valid condition to the granting of licenses by the governing power. A petition to have that cause heard in this court was denied. The case of *Galindo* v. *Walter,* 8 Cal. App. 235, [96 Pac. 505], is easily distinguishable from *Denton* v. *Vann.* In the latter case the ascertainment of the will of the electors was not made the basis of the issuance of licenses under an existing ordinance. The common council sought to have the electors advise them by ballot whether or not the majority favored prohibition of the sale of intoxicating liquors. The district court held that under the existing law the council had no power to submit the proposed question on the ballot. Respondent argues, correctly we believe, that under the authority of *Ex parte Beck,* 162 Cal. 702, [124 Pac. 543], the taking effect of the ordinance is properly made to depend upon the vote of the electors of a particular locality. In that case the submission of the question to the voters in a supervisorial district was achieved under the ''Wyllie Law''; in this it was under the general power given to the supervisors by section 11 of article XI of the constitution of California, which carries with it the power to select the subdivision in which the vote may be taken. Under the authorities cited above we must hold that this ordinance does not conflict with the ''Wyllie Law'' and that the submission to the voters of the questions relating to issuance of licenses in Lamanda Park precinct was proper.

We do not see that the ordinance is essentially discriminatory against wines manufactured in Los Angeles County. We are told that possibly in a precinct retail liquor licenses might be issued but winery keepers' licenses might be denied. In such a condition of affairs, it is argued, wines of foreign manufacture might be sold, while those made in the precinct could not be disposed of. But we are not confronted with that phase of the matter. Neither foreign nor domestic wines could be sold in Lamanda precinct by a solicitor taking orders at a place other than a fixed place of business. But even if the hypothetical condition presented by petitioner did exist, the mere fact that he could not do business upon the same terms as others engaged in a different branch of the liquor traffic would not necessarily destroy the ordinance. The

power to regulate involves a wide discretion in the selection of the classes of dealers in intoxicants who should be subjected to regulation. For example, an ordinance is valid which gives the right to sell liquors only by keepers of hotels, and permits the serving of intoxicants only in the dining-rooms of such hotels and as parts of regular meals. Indeed, the governing power which may prohibit a thing altogether may impose even arbitrary restrictions upon its existence. (*Denton* v. *Vann,* 8 Cal. App. 677, [97 Pac. 675] ; *In re Kidd,* 5 Cal. App. 159, [89 Pac. 987] ; *Ex parte Christensen,* 85 Cal. 213, [24 Pac. 747].)

There is no force in the contention that the ordinance attempts to prohibit the disposal of goods lawfully possessed. Its operation is confined to the territory under the regulative authority of the supervisors of Los Angeles County. Petitioner is at liberty to dispose of his employer's products in any place without that area. Upon the same reasoning and under the interpretation which we have given it, the ordinance does not by its terms prevent the shipment of goods in the practice of interstate commerce.

Being a legitimate exercise of police power, the ordinance does not violate the provisions of the fourteenth amendment to the constitution of the United States. (*Ex parte Campbell,* 74 Cal. 20, [5 Am. St. Rep. 418, 15 Pac. 318].)

For the reasons given above, the writ is discharged and the prisoner remanded to custody.

Shaw, J., Lorigan, J., Sloss, J., and Angellotti, C. J. concurred.