[Crim. No. 1893. In Bank.—September 30, 1915.]

## In the Matter of CHARLES GILSTRAP, on Habeas Corpus.

CRIMINAL LAW—HABEAS CORPUS—MOTION TO QUASH WRIT—UNAUTHORIZED PROCEDURE.—A motion to quash a writ of *habeas corpus* is in the nature of a demurrer to the petition, and is not contemplated by the procedure on *habeas corpus* in this state.

ID.—ACT IMPOSING LICENSE TAX ON ITINERANT DRUG VENDERS—CONSTITUTIONALITY OF.—The act of 1903 (Stats. 1903, p. 284), as amended in 1907 (Stats. 1907, p. 765) and 1909 (Stats. 1909, p. 419), is not repugnant to section 1 of the fourteenth amendment of the constitution of the United States.

ID.—DEFINITION OF ITINERANT VENDERS—HAWKERS AND PEDDLERS.— The definition of an itinerant vender as found in section 3 of the act is broad enough to include hawkers and peddlers.

ID.—POLICE POWER—CONSTRUCTION OF CONSTITUTION.—The fourteenth amendment of the federal constitution was not designed to interfere with the reasonable exercise of the police power in the several states; and said act constitutes a valid exercise of the police power of the state.

ID.—LICENSE TAX ACT—GENERAL LAW.—Said act imposing a license tax is a general law, enforceable in every part of the state, regulating the business of selling or in any manner disposing of drugs within the state by itinerant venders, as that term is defined in section 3 of the act.

ID.—REGULATION OF BUSINESS—ACT NOT FOR REVENUE.—By said act the legislature only intended to regulate the business of selling drugs by itinerant venders within the limits of the police power of the state and did not assume to exercise the power of taxation for the purposes of revenue.

ID.—AMENDMENT OF 1907—EXEMPTION OF EX-UNION SOLDIERS AND SAILORS—CONSTITUTIONALITY OF ACT.—The third proviso of section 2 of the act as amended in 1907, relating to the exemption of ex-Union soldiers and sailors, does not render the act unconstitutional, as it is a general law enforceable throughout the state and the proviso plainly indicates that the exemption applies only to a license tax of any county, town, or village, incorporated city or municipality in the state of California, and is merely a legislative disclaimer of any intention to interfere in any sense with the exemption act of 1905 (Stats. 1905, p. 307), permitting such ex-soldiers and sailors to vend, hawk and peddle goods in any county, town, or village, incorporated city or municipality within the state, without a license, and cannot be held to apply to persons required to pay the state license tax.

ID.—ACT OF 1903 AND PHARMACIST ACT—CONSTRUCTION OF.—The act of 1903, as amended in 1907 and 1909, and the Pharmacist Act to which it refers, are supplementary to each other and together constitute the legislative plan for regulating the entire business of selling drugs, nostrums, and ointments, and they indicate an intent to regulate rather than to tax, and cannot be held to arbitrarily place an unequal burden upon a class.

ID.—AMOUNT OF LICENSE FEE—REASONABLENESS OF.—It cannot be held as a matter of law that the legislative judgment as to the amount of fee or charge reasonably necessary for the regulation of the business covered by the act of 1903, viz.: one hundred dollars for each half year, is wrong.

APPLICATION originally made to the Supreme Court for a Writ of Habeas Corpus.

The facts are stated in the opinion of the court.

W. J. Brown, and Jay A. Hindman, for Petitioner.

Short & Sutherland, and L. J. Maddux, for Respondent.

LAWLOR, J.—The petitioner presented his petition to this court for a writ of *habeas corpus* but before it was considered he interposed an amended petition and the pending writ was issued thereon. The amendment consists of allegations to the effect that petitioner had previously presented a similar petition to the superior court of Stanislaus County and that it was denied.

The amended petition sets forth that upon a complaint sworn to by S. F. Scott, inspector of the California state board of pharmacy, and filed in the justice's court of Modesto township, county of Stanislaus, petitioner was arrested, tried, and convicted and sentenced to pay a fine of one hundred dollars, with alternative imprisonment in the county jail at the rate of one day for every dollar of said fine remaining unpaid, and the costs of said action, for the offense of misdemeanor, to wit: Carrying on and conducting, as an itinerant vender, the business of selling drugs without previously obtaining a license therefor (Stats. 1903, p. 284; Stats. 1907, p. 765; Stats. 1909, p. 419). The complaint also avers that petitioner was not then and there an ex-Union soldier or sailor of the civil war, honorably discharged from the military or marine service of the United States.

Upon his failure and refusal to pay the fine imposed the petitioner was taken into custody by Arthur S. Dingley, sheriff of the said county and the respondent herein, whose return sets forth the commitment on which the petitioner is held, and avers that petitioner was in such custody when he applied for the writ. No issue of fact was raised by the return, but on the oral hearing of the writ the original commitment was produced by the respondent. At the same time he presented a written motion to quash the writ. But as such a motion is in the nature of a demurrer to the amended petition, and is not contemplated by the procedure on *habeas corpus* in this state (Pen. Code, tit. XII, part II, c. 1), the court informed the respondent that it was not necessary to make such a motion. Hence, no formal ruling was made upon it, and the points raised therein will not be further referred to other than as they may be involved in a decision on the merits of the writ.

In the original brief of the petitioner, filed before the oral hearing, several grounds were urged in support of the writ, but it will not be necessary to consider all of them here, for in his reply brief, filed some time after the oral hearing, two grounds alone are relied upon:

First: Is the law or statute in controversy valid, if viewed independently from the proviso which attempts to exempt ex-Union soldiers and sailors from payment of the license fee; and

Second: If the law and statute were in all other respects valid, would this proviso render the act unconstitutional?

The two grounds will be considered in the order of their statement.

First: A consideration of this question will be divided into two parts:

(1) Is the legislation repugnant to section 1 of the fourteenth amendment of the constitution of the United States; and (2) Is it a valid exercise of the police power of this state apart from such amendment?

(1) It is claimed by the petitioner that considered apart from the third proviso in section 2 of the act as amended (Stats. 1907, p. 765), which he asserts purports to exempt ex-Union soldiers and sailors of the civil war from the payment of the license tax, the levying thereof is void, in that it is in violation of section 1 of the fourteenth amendment of the consti-

tution of the United States in these particulars: (a) It abridges the privileges and immunities of citizens of the United States; and (b) it deprives them of liberty and property without due process of law.

We will first examine the legislation: The original act prescribing a license tax for itinerant venders of drugs was passed in 1903. (Stats. 1903, p. 284.) Section 2 was amended in 1907 (Stats. 1907, p. 765), and section 1 in 1909 (Stats. 1909, p. 419).

Section 1 of the act as amended reads in part: "No person as principal or agent, shall conduct as an itinerant vender the business of selling or in any manner disposing of drugs . . . within this state, without previously obtaining a license therefor as herein provided." The scope of this section was enlarged in 1909 by the insertion of the clause "or in any manner disposing of" between the words "selling" and "drugs." But as the complaint charged that the petitioner did carry on and conduct as an itinerant vender the business of "selling" drugs, and not otherwise disposing of them, the change is not important here other than to show the exact state of the legislation at the time the complaint against the petitioner was filed.

Section 2 as amended in 1907 (omitting the clause relating to the exemption of soldiers and sailors) reads in part: "A license fee of one hundred dollars is hereby levied upon all such itinerant venders doing business in this state. Said tax shall be paid to the state board of pharmacy, for the use and benefit of the state of California, and shall constitute a special fund for the enforcement of this act, and of the provisions of the act or acts creating such board of pharmacy. Upon the receipt of said sum from any persons desiring to conduct such business within this state, the secretary of said board of pharmacy shall issue a license to such person to carry on such business within this state for the term of six months next ensuing; provided that nothing in this act shall be construed to prevent the collection of any tax or license that may be imposed by any county or municipal authority. . . . "

The amendment of this section in 1907 relates to the following cognate particulars: (a) "The license fee" was substituted for "an annual license fee," the effect of which is, when read in connection with change "(c)," to impose a semi-annual instead of an annual license tax; (b) the expression

"for the payment of the expense of said board of pharmacy and," which preceded "for the enforcement of this act," was omitted; (c) "for the term of six months" took the place of "until the first day of July," thereby abolishing a uniform date for the issuance of the licenses and insuring a full term of six months in the first as well as the succeeding terms; (d) the words "or license" in the first proviso, are added after the word "fee"; and (e) the word "authority" was substituted for "authorities" in the first proviso following the word "municipal."

Section 3 provides that "Itinerant venders under the meaning of this act shall include all persons who carry on the business above described by passing from house to house or by haranguing the people on the public streets or in public places, or use the various customary devices for attracting crowds and therewith recommending their wares and offering them for sale."

Section 4 requires the board of pharmacy to file an annual statement with the controller of state, and section 5 prescribes the penalty for a violation of the act.

Section 6 provides that in all actions or prosecutions under this act it need not be alleged in the complaint nor proved by the prosecution that the defendant has not a license as required in this act, but the fact that he has such license may be plead as a matter of defense.

Section 7 repeals all acts or parts of acts in conflict with this act.

The definition of an itinerant vender as found in section 3 of the act, is broad enough to include hawkers and peddlers. (Standard Dictionary; *Pegues* v. *Ray,* 50 La. Ann. 574, [23 South. 904, 905]; *Andrews* v. *White,* 32 Me. 388, 389; note to *Hager* v. *Walker,* 129 Am. St. Rep. 276, [25 Cent. Dig. 1114–1116]; *Emert* v. *Missouri,* 156 U. S. Rep. 296–306, [39 L. Ed. 430, 5 Inters. Com. Rep. 68, 15 Sup. Ct. Rep. 367]; *Baccus* v. *Louisiana,* 232 U. S. 334–338, [58 L. Ed. 627, 34 Sup. Ct. Rep. 439]; and 21 Cyc., p. 370.)

Is such legislation violative of the fourteenth amendment of the constitution of the United States? The petitioner claims that "it is not a police regulation, but a mere trade or commercial regulation, and not within the power of the legislature to enact."

It is well established that the fourteenth amendment of the federal constitution was not designed to interfere with the reasonable exercise of the police power in the several states. In *Barbier* v. *Connolly*, 113 U. S. 29, 31, [28 L. Ed. 923, 5 Sup. Ct. Rep. 357]), passing on the constitutionality of a laundry ordinance of the city and county of San Francisco, it is said:

''In this case we can only consider whether the fourth section of the ordinance of the city and county of San Francisco is in conflict with the constitution or laws of the United States. We cannot pass upon the conformity of that section with the requirements of the constitution of the state. . . . (p. 31.) The fourteenth amendment, in declaring that no state 'shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws,' undoubtedly intended not only that there should be no arbitrary deprivation of life or liberty, or arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights. . . . But neither the amendment—broad and comprehensive as it is—nor any other amendment, was designed to interfere with the power of the state, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education, and good order of the people, and to legislate so as to increase the industries of the state, develop its resources, and add to its wealth and prosperity.'' (*Powell* v. *Pennsylvania*, 127 U. S. 683, [32 L. Ed. 353, 8 Sup. Ct. Rep. 992]; *Mugler* v. *Kansas*, 123 U. S. 623, [31 L. Ed. 205, 8 Sup. Ct. Rep. 273]; *Butchers' Union Co.* v. *Crescent City Co.*, 111 U. S. 746–751, [28 L. Ed. 585, 4 Sup. Ct. Rep. 652]; *Yick Wo* v. *Hopkins*, 118 U. S. 356, [30 L. Ed. 220, 6 Sup. Ct. Rep. 1064]; *Minnesota Ry. Co.* v. *Beckwith*, 129 U. S. 28, 33, [32 L. Ed. 586, 9 Sup. Ct. Rep. 207]; *Giozza* v. *Tiernan*, 148 U. S. 662, [37 L. Ed. 599, 13 Sup. Ct. Rep. 721]; *In re Kemmler*, 136 U. S. 436, [34 L. Ed. 519, 10 Sup. Ct. Rep. 930]; *Davis* v. *Massachusetts*, 167 U. S. 47, [42 L. Ed. 71, 17 Sup Ct. Rep. 731]; *Jones* v. *Brim*, 165 U. S. 180, 182, [41 L. Ed. 677, 17 Sup. Ct. Rep. 282]; *Missouri Pac. Ry. Co.* v. *Humes*, 115 U. S. 512, 519, [29 L. Ed. 463, 6 Sup. Ct. Rep. 110]; *In re Rahrer*, 140 U. S. 554, [36 L. Ed. 572, 11 Sup Ct. Rep. 865].)

There is nothing in any of the authorities cited by the petitioner to the contrary of this doctrine. Applying the foregoing authorities to the case here, the recent cases of *Emert* v. *Missouri,* and *Baccus* v. *Louisiana,* seem to us conclusive on the question of the constitutionality of the legislation under the fourteenth amendment. *Emert* v. *Missouri* upheld a statute of the state of Missouri requiring the payment of a license tax by itinerant peddlers. The legislation was declared not to be repugnant to the grant by the federal constitution to Congress of the power to regulate commerce among the several states. The case cites many authorities on the general subject with reference to the fourteenth amendment of the federal constitution, and holds that such legislation is a valid exercise of the power of the state over persons and business within its borders.

*Baccus* v. *Louisiana* sustained a statute of the state of Louisiana, passed in 1894, prohibiting the sale of drugs by itinerant venders or peddlers, in the following language [232 U. S. 337, 58 L. Ed. 627, 34 Sup. Ct. Rep. 440]:

" . . . Thus considering the case in its true aspect, the single issue to be decided is, Did the state have power, without violating the equal protection or due process of law clause of the fourteenth amendment, to forbid the sale by itinerant venders of 'any drug, nostrum, ointment, or application of any kind intended for the treatment of disease or injury,' although allowing the sale of such articles by other persons? That it did have such authority is so clearly the result of a previous ruling of this court (*Emert* v. *Missouri,* 156 U. S. 296, [39 L. Ed. 430, 15 Sup. Ct. Rep. 367]), or at all events is so persuasively made manifest by the authorities cited, and the reasoning which sustained the ruling of the court in the case just stated, as to leave no room for controversy on the subject (pp. 306, 307). Moreover, the power which the state government possessed to classify and regulate itinerant venders or peddlers exerted in the statute under consideration is cumulatively sustained and made, if possible, more obviously lawful by the fact that the regulation in question deals with the selling by itinerant venders or peddlers of drugs or medicinal compounds, objects plainly within the power of government to regulate."

In the opening brief of the petitioner, section 3 of article I of the constitution of this state is cited to the proposition

that the constitution of the United States is the supreme law of the land, which is undoubtedly true "as to all matters provided for therein . . . whether so recognized or not . . . " (*People* v. *Nolan*, 144 Cal. 75, [77 Pac. 774], and authorities are then cited to the point that a statute may be rendered invalid either by the express or implied terms of the federal constitution.

But it is manifest from the foregoing authorities that the levying of a license tax by the state for the purpose of regulating the business of selling drugs by itinerant venders is not repugnant to the fourteenth amendment or to the constitution of the United States as a whole.

(2) The next question is, does the legislation constitute a valid exercise of the police power of the state apart from the federal guaranties?

The constitutional limitations of the power to impose license or occupation taxes is discussed at length and many authorities are collated in a note to *Hager* v. *Walker*, 129 Am. St. Rep. 249, [128 Ky. 1, 15 L. R. A. (N. S.) 195, 107 S. W. 254],) wherein an occupation tax on real estate agents was declared unconstitutional. Under the head of mercantile pursuits, the right to impose a license tax on the occupation of vending milk, meats, weapons and ammunition, tobacco and the like is supported. Upon the subject of licensing the occupation of hawkers and peddlers (paragraph 7), it is said:

"The occupation of hawkers and peddlers is one which from early times has been deemed a proper subject for special legislative control and restriction, particularly in cities. The primary purpose for regulating this occupation should be to protect the public from imposition from dishonest traders. It is probable, however, that most regulations find their impulse in the demands of established shopkeepers for protection from competition with hawkers and peddlers. So that it may be said that the purpose of regulating the occupation of peddling is to protect, on the one hand, fair traders, especially established storekeepers residing permanently in cities and towns and there paying rent and taxes for the local privilege, from being undersold by itinerant persons, and, on the other hand, to guard the public from fraud and imposition not infrequently practiced by such traders who have no known residence or responsibility." (*State* v. *Cederaski*, 80 Conn. 478, [69 Atl. 19] ; *State* v. *Looney*, 214 Mo. 216, [29 L. R. A.

(N. S.) 412, 97 S. W. 934, 99 S. W. 1165] ; *Saulsbury* v. *State,* 43 Tex. Cr. 90, [96 Am. St. Rep. 837, 63 S. W. 568].)

" . . . That persons who desire to peddle may be required to obtain a license and pay a fee therefor, or may be required to pay a tax for the privilege of following their occupation, is attested by numerous recent decisions. . . . Such regulation and taxation are valid, unless made partial, unreasonable, oppressive, or discriminatory. . . . There is no doubt, as the authorities in the preceding paragraph all recognize, that hawkers and peddlers may be placed in a class by themselves for license purposes." (129 Am. St. Rep. 277. See 25 Cent. Dig., pp. 1113–1128; 21 Cyc. 364; and 15 Am. & Eng. Ency. of Law, pp. 290–303.)

It is clear that the license tax is a general law, enforceable in every part of the state, regulating "the business of selling or in any manner disposing of drugs . . . within this state" by itinerant venders, as that term is defined in section 3 of the act. That it is a general law of the state is shown by the language "within this state" in section 1 and "itinerant venders doing business in this state" in section 2 of the act; that the license tax must be paid to the state board of pharmacy "for the use and benefit of the state of California"; that it shall constitute a special fund for the enforcement of this act, and of the provisions of the act or acts creating such board of pharmacy; and that an annual statement is required to be filed by such board with the controller of the state. The charge, it is to be noted, was brought by an inspector of the state board of pharmacy.

On the subject of the police power, it was said by Mr. Justice Sloss in *County of Plumas* v. *Wheeler,* 149 Cal. 762, [87 Pac. 910], which declares constitutional a county ordinance fixing a license fee on the business of raising, herding, grazing, and pasturing sheep and lambs within the county:

"The principles affecting the right of legislative bodies in the exercise of what is known as the 'police power,' to place restrictions upon the conduct of lawful pursuits and occupations, are well settled, although there is often great difficulty in applying these principles to a given state of facts. It is within the legislative discretion to place such restrictions upon the use of any property or the conduct of any business as may be reasonably necessary for the public safety, comfort, or health. 'The police power, the power to make laws to se-

cure the comfort, convenience, peace, and health, of the community, is an extensive one and in its exercise a very wide discretion as to what is needful or proper for the purpose is necessarily committed to the legislative body in which the power to make such laws is vested.' (*Ex parte Whitwell,* 98 Cal. 73 [35 Am. St. Rep. 152, 19 L. R. A. 727, 32 Pac. 879].) 'Rights of property, like all other social and conventional rights, are subject to such reasonable limitations in their enjoyment as shall prevent them from being injurious, and to such reasonable restraints and regulations established by law, as the legislature, under the governing and controlling power vested in them by the constitution, may think necessary and expedient.' (*Commonwealth* v. *Alger,* 7 Cush. (Mass.) 53). . . . The manner and extent of such regulation are primarily legislative questions, and the courts will not interfere unless it clearly appears that the legislature had, under the guise of regulation, imposed an arbitrary or unreasonable burden upon the use of property or the pursuit of an occupation. But the legislative determination is not conclusive."

We think that the legislation is well within the police power of the state. The subject matter is one "which from early times has been deemed a proper subject for special legislative control and restriction." (*Hager* v. *Walker,* 128 Ky. 1, [129 Am. St. Rep. 249, 15 L. R. A. (N. S.) 195, 107 S. W. 254].) The amount of the license tax cannot be said to be "oppressive or discriminatory." (*County of Plumas* v. *Wheeler,* 149 Cal. 763, [87 Pac. 909]; *In re Miller,* 13 Cal. App. 567, [110 Pac. 139].) The law applies uniformly upon the whole of a single class of clearly defined individuals, and the classification is founded upon a natural, intrinsic and constitutional distinction. (*Ex parte Koser,* 60 Cal. 177; *Abeel* v. *Clark,* 84 Cal. 226, [24 Pac. 383]; *Cody* v. *Murphey,* 89 Cal. 522, [26 Pac. 1081]; *Foster* v. *Police Commissioners,* 102 Cal. 483, [41 Am. St. Rep. 194, 37 Pac. 763]; *People* v. *Central Pac. R. R. Co.,* 105 Cal. 576 [38 Pac. 905]; *Murphy* v. *Pacific Bank,* 119 Cal. 334, [51 Pac. 317]; *Rode* v. *Siebe,* 119 Cal. 518, [39 L. R. A. 342, 51 Pac. 869]; *Vail* v. *San Diego,* 126 Cal. 35, [58 Pac. 392]; *Murphy* v. *Pacific Bank,* 130 Cal. 542, [62 Pac. 1059]; *Ruperich* v. *Baehr,* 142 Cal. 190, [74 Pac. 782]; *Kaiser Land and Fruit Co.* v. *Curry,* 155 Cal. 638, [103 Pac. 341]; *Lewis* v. *Curry,* 156 Cal. 93, [103 Pac. 493]; and *Matter of Yun Quong,* 159 Cal. 508, [Ann. Cas. 1912C, 969, 114 Pac. 835].)

And it is plain that the legislature only intended to regulate the business of selling drugs by itinerant venders within the limits of the police power of the state and did not assume to exercise the power of taxation for the purposes of revenue.

Second: If the law is in all other respects valid, does the third proviso of section 2 of the act as amended in 1907 (Stats. 1907, p. 765), relating to the exemption of ex-Union soldiers and sailors, render the act unconstitutional?

The grounds urged by the petitioner against the constitutionality of the third proviso are thus stated in the final brief:

"1. It contravenes section one of the fourteenth amendment of the constitution of the United States, in this:

"(a) It denies to persons within the jurisdiction of the United States the equal protection of the law.

"2. Said statute is inhibited by section eleven (11) of article one (1) of the constitution of California in this:

"(a) It is of a general nature and does not have uniform operation.

"3. It is repugnant to section twenty-one (21) of article one (1) of the constitution of California, in this:

"(a) It grants to a certain class of citizens privileges and immunities which, upon the same terms, are not granted to all citizens."

The act creating the exemptions was adopted by the legislature in 1905 (Stats. 1905, p. 307), and provides:

"Section 1. That on and after the passage of this act all ex-Union soldiers and sailors, honorably discharged from the military or marine service of the United States, shall be permitted to vend, hawk and peddle goods, wares, fruits or merchandise not prohibited by law, in any county, town, village, incorporated city or municipality within this state without a license; provided, said soldier or sailor is engaged in the vending, hawking and peddling of the goods, wares, fruits or merchandise for himself only.

"Section 2. Upon the presentation of his certificate of discharge to the license collector of any county, town, village, incorporated city or municipality in this state, and showing proofs of his identity as the person named in his certificate of honorable discharge, the license collector shall issue to said ex-Union soldier or sailor a license, but such license shall be free, and said license collector shall not collect or demand for the county, town, village, incorporated city or municipality

any fee therefor; provided that nothing in this act shall authorize said soldiers or sailors to sell intoxicating liquors.''

The third proviso reads: ''Provided, however, that nothing in this act shall be held to repeal or modify the provisions of an act approved March 20, 1905, 'An act permitting all ex-Union soldiers and sailors of the civil war, honorably discharged from military or marine service of the United States, the right to vend, hawk and peddle goods, wares, fruits or merchandise not prohibited by law, in any county, town or village, incorporated city or municipality in the state of California, without paying a license.' ''

The language of the complaint regarding the exemptions is as follows: '' . . . and that the said Charles Gilstrap was not then and there an ex-Union soldier or sailor of the civil war, honorably discharged from military or marine service of the United States, as defined in an act entitled 'An act permitting all ex-Union soldiers and sailors of the civil war, honorably discharged from the military or marine service of the United States, the right to vend, hawk and peddle goods, wares, fruits or merchandise not prohibited by law, in any county, town or village, incorporated city or municipality in the state of California, without paying a license,' approved March 21, 1907.''

The petitioner admitted on the trial in the justice's court that he was not a discharged ex-Union soldier or sailor of the United States.

In our opinion it is not necessary to a decision on the merits of the pending writ to determine the constitutionality of the exemption act for the reason that the legislature did not intend that it should have any application to a license tax imposed by the state.

The legislation in which the proviso is found, it has been shown, is a law enforceable throughout the state, and the language of the proviso plainly indicates that the exemption applies only to a license tax of ''any county, town or village, incorporated city or municipality in the state of California.''

The office of a proviso is described in *Minis* v. *United States,* 40 U. S. (15 Pet.) 445, where it is said: ''The office of a proviso, generally, is, either to except something from the enacting clause, or to qualify or restrain its generality, *or to exclude some possible ground of misinterpretation of it, as*

*extending to cases not intended by the legislature to be brought within its purview.''* (The italics are ours.)

The Exemption Act of 1905 (Stats. 1905, p. 307) provides that all ex-Union soldiers and sailors honorably discharged from the military or marine service of the United States shall be permitted to vend, hawk and peddle goods "in any county, town or village, incorporated city or municipality within this state'' without a license. The third proviso is to the effect that the legislation imposing the license tax shall not be held to repeal or modify the Exemption Act as it affects the legislative authority of counties, towns, villages, incorporated cities or municipalities within the state. In other words, the proviso is merely a legislative disclaimer of any intention to interfere in any sense with the Exemption Act of 1905. But this is not the equivalent of extending its operation and it cannot, therefore, be held to apply to persons required to pay the state license tax.

Upon the subject of exemptions in a license tax see 32 Cent. Dig., p. 2567 and 25 Cyc. 621.

It is to be noted that the Exemption Act of 1905 is only referred to in the amending statute of 1907. The subject of exemptions forms no part of the original statute of 1903, nor is it referred to in the amendment of 1909. Nor again does the Exemption Act directly or indirectly refer to the act of 1903. These omissions are significant since the acts of 1903, 1907 and 1909 all relate, as we have seen, to a general law of the state as distinguished from a local law or ordinance. The complaint expressly refers to the license statute of 1907.

It was clearly the intention of the legislature to limit the application of the Exemption Act of 1905 and the proviso of 1907 to local laws or ordinances. They have no other scope or purpose.

The conclusion that the proviso is not aimed at the state license tax obviates the necessity of deciding whether ex-Union soldiers and sailors who, "as principal or agent, shall conduct as an itinerant vender the business of selling or in any manner disposing of drugs, nostrums, ointments or any appliances for the treatment of disease . . . '' belong in the category fixed by the Exemption Act, which declares that ex-Union soldiers and sailors "shall be permitted to vend, hawk and peddle goods, wares, fruits or merchandise . . . ,'' provided they so vend, hawk and peddle for themselves only.

It having been held that the legislation prescribing the license tax is valid, and that the third proviso of the Amendatory Act of 1907 has no application thereto, the question now remains whether the writ should be granted because of the allegations of the complaint referring to the proviso. But since the proviso has no application to the state license tax, such allegations must be treated as surplusage and disregarded. The complaint still states facts sufficient to constitute the offense, and the justice's court having acquired jurisdiction over the person of the petitioner, it had authority to hear and determine the charge.

Writ discharged and petitioner remanded.

Sloss, J., and Lorigan, J., concurred.

SHAW, J., Concurring.—I see nothing in this case requiring elaborate statement, prolonged discussion, or the citation of many authorities. Assuming that the law in controversy is an exercise of the police power and not of the power of taxation, the questions presented have long been settled by numerous decisions and are comparatively simple and easy of solution. Upon that hypothesis, the decisions in *Baccus* v. *Louisiana*, 232 U. S. 337, [58 L. Ed. 627, 34 Sup. Ct. Rep. 439], *Ex parte Campbell*, 74 Cal. 20, [5 Am. St. Rep. 418, 15 Pac. 318], and *Ex parte Coombs*, 169 Cal. 484, [147 Pac. 131], establish the proposition that a law regulating a business which, if unrestricted, may be injurious to the public health or safety, violates neither the state nor the United States constitution.

If, however, the act is not a police regulation but an act imposing a tax for revenue, it might, perhaps, be plausibly urged that a law imposing an occupation tax solely upon itinerant drug peddlers, leaving all other peddlers and all other mercantile pursuits free from such taxes, would be an improper discrimination against one class of peddlers, on the ground that there is no just basis for the classification. The petitioner argues that it is a revenue tax and that it arbitrarily places an unequal burden upon a class. Justice Lawlor has not discussed this objection. The terms of the act, and of the Pharmacist Act to which it refers, satisfactorily show that it was enacted for the purpose of regulation and not for revenue. The charge is denominated "a license fee."

It is required to be paid to the state board of pharmacy for use in enforcing this act and the Pharmacist Act also. The latter creates a state board of pharmacy and regulates the business of selling drugs and compounding prescriptions in this state, being undoubtedly a police measure. The two acts are, therefore, supplementary to each other and together constitute the legislative plan for regulating the entire business of selling drugs, nostrums, and ointments. The legislative conclusion that the fees received from the peddlers should be added to the fees paid under the Pharmacist Act, and the whole devoted to the use of carrying out and enforcing the general plan, is a legitimate exercise of its discretion to apportion and apply the fund, in view of the fact that the two laws are to be regarded as one covering the entire subject. This indicates the intent to regulate, rather than to tax. The law comes within the rule thus stated in *Plumas* v. *Wheeler*, 149 Cal. 763, [87 Pac. 911]. "It is also well settled that the power to regulate a business may be exercised by means of a license fee or charge. The amount of the license fee, however, must not be more than is reasonably necessary for the purpose sought, i. e., the regulation of the business." The legislative judgment as to the amount is conclusive, unless it clearly appears to be wrong. In view of the uses to which the license fees are to be devoted we cannot say it exceeds the amount reasonably necessary.

The objection growing out of the supposed exemption of ex-Union soldiers and sailors has no foundation in fact. As Justice Lawlor shows, there is no exemption from the state license fee. The act of 1905 merely exempts peddlers of all kinds of goods who are honorably discharged ex-Union soldiers and sailors from paying local license fees imposed by county, city, or town ordinances. It has no application to a state license.

I believe that the law in question is valid and I concur in the judgment that the petitioner be remanded.

Sloss, J., and Melvin, J., concurred.

ANGELLOTTI, C. J., Concurring.—I concur in the judgment, and generally in the views expressed in the opinion of Justice Lawlor. That the act involved was intended solely as a regulatory measure designed to regulate the business of

selling "drugs, nostrums, ointments or any appliances for the treatment of diseases, deformities, or injuries" by *itinerant venders* is very clear to me. I am also satisfied that it cannot be held as matter of law that the legislative judgment as to the amount of fee or charge reasonably necessary for the regulation of *that* business, viz.: one hundred dollars for each half year, is wrong.