AT THE

OCTOBER SESSION 1866, IN BOSTON.

PRESENT:

Hon. GEORGE T. BIGELOW, CHIEF JUSTICE
Hon. EBENEZER R. HOAR, ⎫
Hon. REUBEN A. CHAPMAN, ⎬ JUSTICES.
Hon. HORACE GRAY, Jr., ⎪
Hon. JOHN WELLS, ⎭

## DUKES COUNTY.

### WILLIAM B. MAYHEW vs. DISTRICT OF GAY HEAD.

Parol evidence is incompetent to show a vote passed at a meeting of the district of Gay Head.

The district of Gay Head, as incorporated by *St.* 1862, *c.* 184, is not the successor of the Gay Head Indians, or in any such privity with them as to be legally liable for any debts or demands alleged to exist against the Indians prior to the enactment of that statute.

Prior to the enactment of *St.* 1862, *c.* 184, the Gay Head Indians were incapable of contracting a debt for which they could be held legally liable, without the consent of their guardian; and the fact that no guardian had been appointed for a long period did not render them legally competent to enter into contracts.

CONTRACT. The defendants were a corporation created by *St.* 1862, *c.* 184. The declaration contained five counts. The 1st count was for $87.25, according to an account annexed, namely, for groceries and other articles. The 2d count alleged that the body politic, namely, the proprietors or association, to which the defendants were successors and privies in law, owed

the plaintiff the sum of $87.25 for goods sold and delivered on their order, in pursuance of the administration of their public pauper system; and that the defendants have succeeded to said liability, and adopted the same. The 3d count alleged that said body politic, to which the defendants were successors and privies in law, made to the plaintiff by its clerk an order for the payment of $87.25; and that the defendants have succeeded to said liability, and adopted the same. A copy of the order was annexed. The 4th count alleged that the plaintiff had a claim against the defendants, which was duly presented, and by both parties duly referred to the decision of arbitrators chosen respectively by the parties, whose award was to be binding and final; and said arbitrators duly awarded the sum of $61.80 to the plaintiff, and the defendants owe the plaintiff said amount and interest thereon. The 5th count alleged that the plaintiff had a claim against the defendants, which was duly presented, and it was arranged that the defendants should pay the plaintiff the sum of $61.80, and the defendants owe the plaintiff said amount and interest thereon.

The defendants in their answer denied all liability, and all the plaintiff's allegations, and insisted on the statute of frauds.

At the trial in the superior court, before *Ames*, J., it appeared that the Indians and persons of color constituting the Gay Head tribe of Indians, occupying the plantation of Gay Head on the island of Martha's Vineyard, were made a body politic and corporate by *St.* 1862, *c.* 184, § 4. Previously to that time, and for a long series of years, they had been in the habit of holding annual meetings, choosing officers, passing votes concerning their joint property, and also making provision from time to time for the support and relief of paupers among their number. The plaintiff, from time to time, upon orders from the overseers of the plantation, furnished clothing, groceries and other supplies, for use in the relief of such paupers. In 1861 these orders were examined, and a settlement of accounts took place, resulting in a new order in favor of the plaintiff upon the treasurer of the plantation, given by their clerk, for $87.25. The plaintiff contended that a balance of $61.80 remained due thereon, with

interest.    The records of the district were kept in the same book that contains the previous records of the plantation, and the general course and mode of the public business of the district in all its municipal affairs have been the same since its incorporation as previously.    The public or common property of the district consists of certain beds of valuable clay and tracts of pasture land; and it was the practice of the tribe or plantation, by vote, to regulate and limit the quantity of clay to be taken out annually, allowing a certain quantity per man; and the same system has been followed out by the district since its incorporation.    And the plaintiff contended that on the foregoing facts he was entitled to recover on the 1st, 2d, and 3d counts of his declaration, the balance due on said order, with interest.

Under the 4th and 5th counts of the declaration, and for the purpose of proving that the defendants were liable on the further and additional ground that they had expressly assumed the debt, the plaintiff called as a witness John D. Rotch, the holder and owner of the order, who testified that at the annual meeting of the district in March 1864 he was present, and exhibited the order to the treasurer, and the subject matter was called to the attention of the meeting.    In answer to a call by the plaintiff for the defendants' records, a book was produced in court purporting to be the records of the doings of the plantation for several years, and of the defendants since their incorporation. In the record of the meeting in question, the only vote that appears in reference to the subject matter of this suit is in these words : " Chosen and voted Mr. Z. Howaswee to see, with Mr. Tristram Mayhew, if they can find any account against Mr. William B. Mayhew's order being paid or partly paid." The plaintiff, however, insisted that another and different vote was actually taken, and declared to be adopted, referring the question to these two persons, which vote the clerk did not correctly record ; that the plaintiff, relying upon that vote, did enter into arbitration on the subject, whereby his claim was reduced to $61.80 ; that the defendants' clerk did not write up and extend the record until after the result of the reference was made

known, and that the original minutes taken by him differed materially from the record as extended and finished. He was permitted by the court, against the defendants' objection, to introduce parol evidence, that when the bill was presented the subject was discussed in the meeting, and that one of the persons present, (Z. Howaswee,) after remarking to the meeting that the matter had been up before and nothing was done, and now it ought to be finally settled, moved that the subject be referred to two persons, one to be chosen by the district, and one by the claimant; that the proposition that it be referred to Z. Howaswee and Tristram Mayhew (the latter of whom was selected by said Rotch, and was not an inhabitant or member of the district) was put to vote, adopted and declared by the presiding officer to be a vote; that thereupon said Howaswee and Mayhew agreed on a time and place of meeting, to decide the matter; and that after the result had been ascertained, and some weeks after the meeting, Rotch called on the clerk to inquire about the record, and the clerk produced a memorandum to the effect that the two persons above named were chosen a committee " to see about Mayhew's order," and no more. The clerk, on the other hand, testified that they chose referees to go and find out whether anything had been paid towards the order; and that the original memorandum of the vote which was exhibited to Rotch was in the same terms in which the vote was afterwards written out in the record. Another witness for the lefendants (an inhabitant of the district) testified that the substance of the vote was to appoint men to overhaul the books and see whether anything had been paid on the order. On this evidence, the court left it to the jury as a question of fact, whether the defendants voted to submit the claim to arbitration, telling the jury at the same time that upon that question there was a presumption that the record was true and accurate. The court also ruled that a vote to refer the claim to arbitration would be equivalent to an express vote to assume the debt, if and so far as the award should be against them.

Evidence was offered by the plaintiff tending to show that, as soon as the vote passed, public notice was given, on the floor of

the meeting, of the intended time and place of the hearing by the two alleged referees; that they did meet accordingly, said Howaswee having first examined the books and vouchers of the treasurer to ascertain all that he could about any payment; that no person appeared before them on behalf of either party; and that they agreed upon and signed the following report: " $61.80. Chilmark, March 12th 1864. The undersigned have this day had reference on the account of William B. Mayhew against the District of Gay Head, and come to the following agreement: That the proprietors of Gay Head pay to William B. Mayhew the sum of sixty-one dollars $\frac{80}{100}$;" and that they published and made known their report by causing one copy to be left with the defendants' treasurer, and the other with said Rotch, at or about its date.

The defendants requested the court to rule that, as the original claim was against the plantation, and as there was no evidence of any promise in writing by the defendants to pay it, or submit the same to arbitration, the plaintiff could not maintain his action. The judge however ruled that it was competent for the defendants, after the change in their organization produced by the act of incorporation, to assume the liability for any just preëxisting debt due from the plantation, by express vote so to do, or by a vote to submit the matter to arbitration.

The defendants also insisted that the report agreed upon in writing by the two persons above named was not an award. The judge however ruled that, substantially and in effect, it was an award.

The jury returned a verdict for the plaintiff, and the case was reported for the determination of this court.

G. Marston, for the defendants, cited, to the point that the defendants were not privies in law to the tribe of Gay Head Indians, Witmer v. Schlatter, 2 Rawle, 359; Wesley Church v. Moore, 10 Barr, 273; Goddard v. Pratt, 16 Pick. 432.

T. M. Stetson, for the plaintiff, cited Episcopal Charitable Society v. Episcopal Church, 1 Pick. 375.

BIGELOW, C. J. The difficulties in the way of maintaining this action, on the facts set forth in the report, are numerous and insuperable.

1. In the first place, there was no competent evidence of any agreement by the defendants to submit the matter in controversy to arbitration. The records of the district disclose no such submission, and no vote which bears any semblance to an agreement of reference. The parol evidence which was admitted in support of this part of the plaintiff's case was clearly incompetent. It tended to impeach and contradict the record of the proceedings of the district, which, under *St.* 1862, *c.* 184, § 4, like those of the district of Marshpee, were required to be kept in writing by the clerk of the district, in the same manner as those of towns. Extrinsic evidence to vary or control the record was clearly inadmissible in collateral proceedings, although it might be competent in a proper process to compel the clerk to amend his record according to the truth. *Taylor* v. *Henry*, 2 Pick. 397, 402. *Manning* v. *Fifth Parish in Gloucester*, 6 Pick. 16. *School District in Stoughton* v. *Atherton*, 12 Met. 105, 113.

2. The evidence was wholly insufficient to sustain the action on the other counts in the declaration. The claim which the plaintiff seeks to enforce is for a debt alleged to have been incurred by various persons belonging to the Gay Head tribe of Indians, now included within the district of Gay Head, for goods sold and delivered prior to the incorporation of said district by *St.* 1862, *c.* 184. The obvious and decisive objection to the enforcement of this claim is, that it is not due and owing from the " body politic and corporate " which that act creates. No contract, either express or implied, exists by force of which the corporate body can be held liable. There is no rule or principle of the common law by virtue of which the creation of a municipal corporation can be held to convert the debts previously due, either jointly or severally, from the persons who become members of the new municipality, into corporate liabilities. In the absence of any express legislative enactment, the corporation cannot be said to be the successors of or in privity with its members, so as to be responsible for their previously existing liabilities. There is no legal identity between a corporation and the individuals who compose it. The corporate body is a distinct legal entity, and can be held liable only by showing some breach of

corporate duty or contract. None such is proved in the present case. Certainly there is nothing in the act incorporating the defendants which can be construed to impose on them the duty of assuming and paying the plaintiff's claim. The " duties and liabilities " to which the defendants are made subject by their charter are only those which may be incurred by them by the exercise of the powers and functions with which they are clothed by the statute. It would be a perversion of the words of the act to give them any other interpretation. They were designed only to prescribe the extent of the capacity of the defendants to take on themselves duties and liabilities in the future, and not to impose on them those which others had already assumed or previously were bound to perform and discharge.

3. But the more satisfactory and decisive answer to the plaintiff's claim is, that he has no valid existing debt or claim against any one, which can be enforced by a suit at law. The Indians and people of color constituting the " Gay Head tribe," prior to *St.* 1862, *c.* 184, by which they were created a corporation with municipal rights and privileges, were in a certain sense wards of the Commonwealth, over whose property and persons a supervision was exercised from time to time, and for whose protection against the dangers arising from improvidence and incapacity specific enactments were made. Among these, by *St.* 1811, *c.* 78, § 2, it was expressly provided that " no actions shall be brought against any of the Indian, mulatto or negro proprietors of said lands, for any debt hereafter to be by them contracted with any person or persons for any sums whatsoever," unless the same was examined and allowed by guardians appointed under the first section of the same act. This provision was in force at the time the articles, for the price of which the plaintiff seeks by this action to recover, were sold and delivered to divers persons belonging to said tribe of Indians and proprietors of said lands. Nor has it yet been repealed, unless the *St.* of 1862, *c.* 184, operates as a partial repeal by implication, so far as relates to debts which may be incurred by the district. It is true that no guardian has been appointed during a long series of years under the provisions of the act of 1811, and that during

this period the proprietors of said lands have managed their own affairs, as well those of a municipal as of a private nature. But this omission to comply with certain provisions of the statute did not abrogate it, nor did it operate to give validity to debts contracted by said proprietors, so as to authorize the maintenance of actions to enforce their payment. It seems therefore to be clear that the plaintiff is not entitled to maintain this action.

*Exceptions sustained.*