Macdonald, D. Lloyd, J.
Before the Court are the plaintiffs’ motion for summary judgment and the defendant Town of Fairhaven’s (the “Town’s”) cross motion for the same. The defendant Fairhaven Wind, LLC (“Fairhaven Wind”) filed a memorandum in support of the Town’s position, but it submitted that, as to the claims pending against it, the plaintiffs’ motion was premature because of the need for discovery as to several material issues. The context of the dispute is the lease by the Town of two parcels of Town-owned land upon which Fairhaven Wind constructed and currently operates two large wind turbines.
At issue is whether one of the turbines was unlawfully constructed because the lease of the parcel upon which it is located was not approved by the May 15, 2007 Town Meeting. The plaintiffs’ position was pungently summarized in the following terms: “It is clear that the Fairhaven Selectboard, acted in direct defiance of the will of the town meeting, by signing a lease for the construction of a wind turbine on a lot of land of which they were not authorized.”
The plaintiffs’ motion is DENIED, and the Town’s cross motion is ALLOWED for the reason that, having reviewed the full record of the town meeting, it is clear beyond any doubt that the lease at issue was executed pursuant to the direct will of the town meeting.
The Summary Judgment Standard
Summary judgment is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. See Community Nat. Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of demonstrating the absence of a triable factual issue and its entitlement to a judgment. See Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
Discussion
The dispute here arises from the circumstance — not denied by either the Town or Fairhaven Wind — that the warrant pursuant to which the town meeting was called and the subsequent article memorializing the decision of the town meeting did not include a specific reference to the assessor’s map parcel number that was the subject of the lease which authorized construction of the turbine.[1], [2]
“Apart from the facts that town meetings are not strictly confined to formal rules of parliamentary procedure and that attendees often conflate warrant articles with motions, the fact remains that the purpose of the warrant and the articles contained therein is merely to inform the residents of the town of the time and place of the meeting and the subjects that will be discussed and acted on.” Wolf v. Town of Mansfield, 67 Mass.App.Ct. 56, 59 (2006).
G.L.c. 39, § 10 “includes provisions that the warrant ‘shall state . . . the subjects to be acted upon’ at the meeting and that ‘no action shall be valid unless the subject matter thereof is contained in the warrant.’ This means only that the subjects to be acted upon must be sufficiently stated in the warrant to apprise voters of the nature of the matters with which the meeting is authorized to deal. It does not require that the warrant contain an accurate forecast of the precise action which the meeting will take upon those subjects.” Town of Burlington v. Dunn, 318 Mass. 216, 219 (1945).
With these principles in mind, the essence of the issue that was before the town meeting was whether its members would authorize the lease of town property adjacent to the Town’s wastewater treatment plant for the construction of two wind turbines. The title of the warrant was, “Lease of Town Owned Land for Purpose of Installing and Operating Wind Turbines.” The warrant’s text referenced that it was for “the limited purpose of installing and operating wind turbines to generate electricity. The subject property will consist of no more than two footprint areas, each containing 10,000 +/-square feet . . .” This text was repeated in the article memorializing the town meeting’s vote approving two sites for the turbines and further provided: “(T]he lessee shall have the right to install and operate up to two turbines to generate electricity (one on each footprint).”
Notwithstanding the clarity of the purpose expressed in the warrant and the article, they both contained references to two assessors parcel numbers (Lots 8 and 8A), only one of which (Lot 8) corresponded with the sites on which the turbines were eventually constructed. The lease that was executed after the town meeting substituted Lot 9 for Lot 8A for the northerly of the two turbines, and the southerly turbine was built on Lot 8. The question for the Court is whether that discrepancy is fatal to the lawful siting of the north turbine.
The plaintiffs urge the court to apply the parol evidence rule strictly to exclude consideration of materials and information extrinsic to the town meeting record. Zaskey v. Town of Whatley, 61 Mass.App.Ct. 609, 614 (2004). They correctly reference the general rule that the records of the town meeting as recorded and maintained by the town clerk are conclusive in relation to the business recorded. See Suburban Land Co., Inc. v. Town of Billerica, 314 Mass. 184, 192 (1943). Similarly, in Mayhew v. District of Gay Head, 95 Mass. 129 (1866), the court found the “record of the proceedings of a town meeting is conclusive as to all business there transacted, and cannot be varied or controlled, nor can omissions in it be supplied, by oral evidence.” Id. at 133.[3]
As noted above, the plaintiffs submit, “It is clear that the Fairhaven Selectboard, acted in direct defiance of the will of the town meeting, by signing a lease for the construction of a wind turbine on a lot of land of which they were not authorized.”
Accordingly, it is necessary for the Court to consult the “record of the proceedings of [the] town meeting.” *454 Mayhew, supra. In a similar situation, the Appeals Court in Selectmen of Stockbridge v. Monument Inn, Inc., 14 Mass.App.Ct. 957, 958 (1982), resolved a dispute as to the intent of a special permit that was at issue by considering a letter that was part of “the detailed record of proceedings” as required by G.L.c. 40A, §18.
Here, Exhibit 11 of the Joint Appendix is a DVD of the entire May 15, 2007 meeting.[4] At minute 20 and 30 seconds into the meeting, the subject of the proposed site of the north turbine is addressed in detail. The person making the presentation employed what appears to be an overhead blow-up of a Google satellite map of the town properties adjacent to the wastewater treatment plant within which the turbines were proposed to be sited.[5] Using a laser pointer, the presenter identified the site of the north turbine by reference to the distance from the last residences on four landmarks (Timothy Street, Hiller Avenue, Peirce’s Point and Shawmut Street). As the presenter pointed out each of the residences and reported the number of feet from each to the site of the north turbine, a straight white line was projected on the screen from the house to the proposed north turbine.
Attached as appendices to this opinion and incorporated herein are freeze-frame images of the presentation as to each residence and the distance from each to the north turbine. As a point of reference, the wastewater treatment plant is clearly visible on the images. As to the respective residences, Timothy Street is Appendix A; Hiller Avenue is Appendix B; Peirce’s Point is Appendix C; and Shawmut Street is Appendix D. The straight white lines representing the distance from the last residences on the referenced streets to the proposed location of the north turbine are circled in thick black ink.
The proposed location of the north turbine as thus presented to the town meeting was squarely within Lot 9. When the question as to the proposed “two footprint areas” for the turbines was later formally called by the moderator, the members of the town meeting knew that it was within Lot 9 that the north turbine was being proposed.[6] And it is within Lot 9 that the north turbine was in fact constructed, as provided in the lease which the Town executed with Fairhaven Wind and was recorded in the Registry of Deeds in November 2011. Joint Exhibit 7. The present location of the north turbine is almost precisely where the presenter at the town meeting predicted it would be as described above. See Exhibit A to Joint Exhibit 7.
Furthermore, the summary judgment record reveals that a number of the plaintiffs and their present counsel (several of whom, including counsel, had been present at the May 15, 2007 town meeting) themselves understood that the town meeting vote was a vote in favor of the north turbine’s location in Lot 9. Following the adverse town meeting vote, on behalf of the plaintiffs, their counsel challenged an order of conditions with regard to the two turbines that was later issued by the Town’s Conservation Commission as to Lots 8 and 9. There was no suggestion then that Lot 9 was not an authorized site of a turbine. Counsel for the plaintiffs also petitioned the Secretary of Environmental Affairs for “Fail Safe Review” of the turbine project and specifically referenced Lot 9 in the subject matter line of the petition. Joint Exhibit 13. Counsel did the same for the plaintiffs in a request to the Department of Environmental Protection for a “superceding order of conditions” as to the turbine project. Joint Exhibit 14. And in June 2008, plaintiffs’ counsel filed a G.L.c. 40A, §17 appeal of the Fairhaven Planning Board’s approval of a special permit in connection with the turbines but took no issue with the circumstance that the north turbine was to be located in Lot 9. Joint Exhibit 15.
It was apparently only in late 2011 that the plaintiffs discovered that Lot 9 had not in fact been referenced in the town meeting warrant and article. Because the Court disposes of the case on the basis that the record of the town meeting unambiguously evinced the intent that the lease for the north turbine relate to Lot 9, the Court will not address the issue whether the plaintiffs’ delay in challenging the siting independently bars relief by the doctrine of equitable estoppel, see In re Donovan’s Case, 58 Mass.App.Ct. 566, 568-69 (2003), or, as argued by the Town, the closely related doctrine of laches, see Colony of Wellfleet, Inc. v. Harris, 71 Mass.App.Ct. 522, 531 (2008).
For similar reasons, it is not necessary for the Court to address the plaintiffs’ further argument that the Town and Fairhaven Wind are not entitled to the benefit of either doctrine on account of the fact that prior to the actual construction of the north turbine, both the Town and Fairhaven Wind were aware that Lot 9 was not referenced in the warrant or the article and, thus, thereafter proceeded at their peril. However, the Court notes that the conclusion of the Town and Fairhaven Wind — reached after consultation with counsel — that there was no legal impediment to executing the subject lease as to Lot 9 was, as reflected in the rationale of this decision, well founded.[7]
The record convinces the Court that the absence of a reference to Lot 9 on the warrant and the article was the result of an inadvertent clerical error. To compel, as the plaintiffs seek, the removal of the north turbine because of that error in the face of indisputable proof that the actual intent of the town meeting was to have the turbine located where it is would turn the logic of the law on its head. Fortunately, the aggregate record of the town meeting is decisive and makes unnecessary even the consideration of such a contortion.
ORDER
The plaintiffs’ motion for summary judgment is DENIED.
*455 The defendant Town of Fairhaven’s cross motion for summary judgment, in which defendant Fairhaven Wind, LLC joins, is ALLOWED.
Judgment shall enter for the defendants.

 The Warrant, notifying Fairhaven’s citizens of the meeting, stated, “Article 2-Lease of Town Owned Land for Purpose of Installing and Operating Wind Turbines — To see if the Town will vote to authorize the Board of Selectmen to lease for a term of no more than twenty five (25) years, with options to extend, a certain portion of town-owned land for the limited purpose of installing and operating wind turbines to generate electricity. The subject property will consist of no more than two footprint areas, each containing 10,000 +/-square feet, on land shown as Assessors Map 28, Lots 8 and 8A. Subject to the terms and conditions of the Lease, Lessee shall have the right to install and operate up to two wind turbines to generate electricity (one on each footprint). The Lease will also provide easements for the development of access roads, electrical connection lines, and other ancillary equipment or facilities necessary for the delivery, construction and operation of the wind turbines and related equipment, and wind non-obstruction easements, or take any other action relative thereto.’’ Joint Exhibit 11.

 The Article published after the town meeting was titled, “Article 2 — Lease of Town Owned Land for Purpose of Installing and Operating Wind Turbines.” The Article states, “By majority vote (141-98), the Town has authorized the Board of Selectmen to lease for a term of no more than twenty-five (25) years, with options to extend, a certain portion of town-owned land for the limited purpose of installing and operating wind turbines to generate electricity. The subject property will consist of no more than two footprints areas, each containing 10,000 +/-square feet, on land shown as Assessors May 28, Lot 8 and 8A. Subj ect to the terms and conditions of the Lease, Lessee shall have the right to install and operate up to two turbines to generate electricity (one on each footprint). The lease will also provide easements for the development of access roads, electrical connection lines and other ancillary equipment or facilities necessary for the delivery, construction and operation of the wind turbines and related equipment, and non-obstruction easements.” Joint Exhibit 1.

 G.L.c. 40, sec. 4 states, “A city or town may make contracts for the exercise of its corporate powers, on such terms and conditions as are authorized by the town meeting in a town, the town council in a town without a town meeting, the city council in a city with the approval of the mayor or the city council in a Plan D or Plan E city with the approval of the manager, or as otherwise authorized in accordance with a duly adopted charter. A city or town may not contract for any purpose, on any terms, or under any conditions inconsistent with any applicable provision of any general or special law.” (Emphasis added.)

 The DVD is part of the “records” of the town meeting as maintained by the Town Clerk. Affidavit of Eileen Lowney, at numbered paragraph 2. Joint Exhibit 9. In a move that likely was later regretted, at the outset of the discussion of the turbine issue, the formal reading of the warrant was voted to be waived.

 Prior to projecting the satellite image, the presenter projected the assessors map and identified Lots 8, 8A, 8B and 9.

 In this respect, the DVD confirms the accuracy of the affidavit of the Town Clerk, Eileen Lowney. Joint Exhibit 9. The Town Clerk concluded at numbered paragraph 18: “Based on my observations at the Special Town Meeting on May 15, 2007, it is my belief that the Town Meeting understood that the proposal they were voting on was for the location of two wind turbines, on two parcels to be located on lots 8, 8A or 9. It is my belief that the Town’s vote was intended to authorize the lease of those parcels on lots 8, 8A or 9.”

 Such good faith would be relevant to Fairhaven Wind’s entitlement to the benefit of G.L.c. 40, §3A, which provides that a “recordable instrument [such as a lease] purporting to affect an interest in real estate, title to which is held by a . . . town . . . shall be binding on the . . . town ... in favor of a purchaser or other person relying in good faith on such instrument notwithstanding inconsistent provisions of general or special law, the city or town charter, by-laws, resolutions or votes.”